[No. 75915-4. En Banc.]
Argued June 9, 2005. Decided December 1, 2005.

THE STATE OF WASHINGTON, *Respondent,* v. ROBERT JAMES
MORSE, *Petitioner.*

2

4

Susan F. Wilk (of Washington Appellate Project), for petitioner.

Janice E. Ellis, Prosecuting Attorney, and Seth A. Fine and Thomas M. Curtis, Deputies, for respondent.

¶1 CHAMBERS, J. — Under article I, section 7 of the Washington Constitution, warrantless searches are per se unreasonable. Exceptions to the warrant requirement are jealously and carefully drawn. Properly obtained, consent to a warrantless search is one of those carefully drawn exceptions. Although Robert James Morse was at home, police gained entry into his apartment by obtaining the consent of a houseguest who, with her husband, had been at Morse's apartment for only five days. The police did not have a search warrant, were looking for another person, and did not obtain Morse's permission to search his apartment until after they found contraband in his bedroom. The State argues (1) that the houseguest had actual and apparent authority to consent and (2) that the police had no duty to obtain Morse's consent until they came upon him and then only if he objected to the search. We disagree. One who has equal or lesser control over a premises does not have

authority to consent for those who are present and have equal or greater control. "Presence" is used in accordance with its ordinary meaning. Persons are not absent merely because the police do not know they are present, nor are they absent until police have come upon them during a warrantless search. "Authority" to consent is a matter of status or control and a question of law. The subjective beliefs and understandings of law enforcement officers are irrelevant to the question of "authority." Law enforcement officers who seek to conduct a warrantless search based upon the exception of consent are well advised to ask for the woman and/or man of the house before seeking consent to search a home. If the man or woman of the house is not present, a brief inquiry could determine the identity of the person present and their authority to give consent; this would give police officers the information needed to properly proceed and to assure protection of constitutional rights. The search of Morse's apartment was unlawful, and we reverse.

## FACTS

¶2 On January 29, 2002, two city of Everett police officers contacted the property manager for the Deer Creek Apartments. The officers had information that Sarah Wall, who was wanted on multiple outstanding felony warrants, was staying in the apartment complex. The manager told the officers that while Wall may have stayed there in the past, she did not believe that Wall was there anymore because bounty hunters had unsuccessfully searched for her in apartment C-108 a few days earlier. She also told officers that she did not recognize Wall from a picture that they showed her. The manager told the officers that Morse was the only tenant on the lease for apartment C-108 and that she was not aware of anyone else living in that apartment.

¶3 The officers then went to Morse's apartment and knocked on the door. A woman, Pam Dangel, answered the

door and told the officers that Wall was neither in the apartment, nor had she been there in over a week. While standing at the door, the officers did not ask Dangel if she lived at the apartment, nor did they inquire as to the nature of her relationship to Morse. Police asked only whether they could enter to search for Wall. According to the police, Dangel agreed to let them enter to look for Wall.[1]

¶4 After police entered, they learned that Dangel and her husband had been staying at Morse's apartment for only a few days. Dangel and her husband planned to stay for one additional night while their apartment was being painted. As one of the officers talked to Dangel, the other proceeded directly to the master bedroom. From outside the bedroom he saw Morse, who was sitting on his bed. The officer identified himself, indicated that he was looking for Wall, and entered the room. As he entered the bedroom, the officer looked toward a closet where he saw a scale, packaging material and a large bag with bluish powder sitting on a desk. Morse claimed that what appeared to be drug paraphernalia was his, but that what appeared to be drugs were not. Morse was then arrested and only after his arrest was his consent to search the rest of his bedroom sought and obtained.

¶5 Morse was convicted of possession of methamphetamine. On appeal, Morse argued that the warrantless search of his bedroom violated article I, section 7 of the state constitution. He argued that Dangel lacked authority to consent to the search. He also argued that because he was present and able to object to the search, the police erred by failing to get his permission prior to entering and searching his bedroom. In an unpublished opinion, the Court of Appeals rejected both arguments, finding that Dangel had both actual and apparent authority to consent to the search, and that because Morse did not explicitly

---

[1] Dangel disputed this fact. She claimed that she attempted to prevent the police from entering but that they forced their way in. The trial court found the police officers' testimony that Dangel told them to "come on in" more credible. Clerk's Papers at 47.

object to the search, the police did not have to secure his consent before entering his bedroom. We granted review. *State v. Morse*, 153 Wn.2d 1023, 110 P.3d 213 (2005).

## ANALYSIS

### COMMON AUTHORITY

¶6 Under article I, section 7 of the Washington Constitution, warrantless searches are per se unreasonable. *State v. Hendrickson*, 129 Wn.2d 61, 70, 917 P.2d 563 (1996). Article I, section 7 provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." Under this provision, the warrant requirement is especially important as it is the warrant which provides the requisite "authority of law." *State v. Ladson*, 138 Wn.2d 343, 350, 979 P.2d 833 (1999). Exceptions to the warrant requirement are to be " 'jealously and carefully drawn.' " *State v. Reichenbach*, 153 Wn.2d 126, 131, 101 P.3d 80 (2004) (quoting *Hendrickson*, 129 Wn.2d at 72). The burden of proof is on the State to show that a warrantless search or seizure falls within one of the exceptions to the warrant requirement. *State v. Acrey*, 148 Wn.2d 738, 746, 64 P.3d 594 (2003) (quoting *State v. Kinzy*, 141 Wn.2d 373, 382, 5 P.3d 668 (2000)).

¶7 In search and seizure cases involving cohabitants, this court has adopted the common authority rule. *State v. Thompson*, 151 Wn.2d 793, 92 P.3d 228 (2004); *State v. Walker*, 136 Wn.2d 678, 965 P.2d 1079 (1998); *State v. Leach*, 113 Wn.2d 735, 782 P.2d 1035 (1989). Because a person's expectation of privacy is necessarily reduced when authority to control a space is shared with others, *Leach*, 113 Wn.2d at 739, such persons necessarily assume some risk that others with authority to do so will allow outsiders into shared areas. We have said that the authority does not rest upon the law of property, with its attendant legal refinements, but rests rather on mutual use of the property. *Id.* We have, thus, justified the common authority rule based upon the theories of "reasonable expectations of

8

privacy" and "assumption of risk." *State v. Christian*, 95 Wn.2d 655, 659-60, 628 P.2d 806 (1981); *Leach*, 113 Wn.2d at 739. In the context of a search, consent is a form of waiver. Ordinarily, only the person who possesses a constitutional right may waive that right. *Cf. Walker*, 136 Wn.2d 678 (wife's consent not effective as waiver of husband's constitutional right to be free from invasion of privacy). Common authority under article I, section 7 is grounded upon the theory that when a person, by his actions, shows that he has willingly relinquished some of his privacy, he may also have impliedly agreed to allow another person to waive his constitutional right to privacy.

¶8 The United States Supreme Court, interpreting the Fourth Amendment to the federal constitution, also applies the doctrine of common authority in searches involving cohabitants. Because of differences in the text of the Fourth Amendment and article I, section 7 discussed below, the United States Supreme Court adopted the apparent authority doctrine. This doctrine is grounded upon the reasonableness of *the search* rather than on reasonable expectations of privacy and the appropriate scope of consent. *See Illinois v. Rodriguez*, 497 U.S. 177, 110 S. Ct. 2793, 111 L. Ed. 2d 148 (1990).

AUTHORITY TO CONSENT

¶9 The narrow issue in this case is whether a temporary guest has authority to authorize a search of the private areas of her host's home while the host is present. More broadly, this case involves the differing analytical frameworks used in applying two different constitutional provisions: the fourth amendment to the United States Constitution and article I, section 7 of the Washington Constitution.[2]

---

[2] The State filed a motion to strike portions of Morse's supplemental brief. That motion is denied.

## The Fourth Amendment

■■ ¶10 The fourth amendment to the United States Constitution prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. The Fourth Amendment does not prohibit "reasonable" warrantless searches and seizures. The analysis under the Fourth Amendment focuses on whether the police have acted reasonably under the circumstances. The following is illustrative of the analytical approach taken under the Fourth Amendment:

> The upshot was that the officers in good faith believed Miller was Hill and arrested him. They were quite wrong as it turned out, and subjective good-faith belief would not in itself justify either the arrest or the subsequent search. But sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment and on the record before us the officers' mistake was understandable and the arrest a reasonable response to the situation facing them at the time.

*Hill v. California*, 401 U.S. 797, 803-04, 91 S. Ct. 1106, 28 L. Ed. 2d 484 (1971).

¶11 In *Rodriguez*, Justice Antonin Scalia, writing for the Court, observed that "what is at issue when a claim of apparent consent is raised is not whether the right to be free of searches has been *waived*, but whether the right to be free of *unreasonable* searches has been *violated*." *Rodriguez*, 497 U.S. at 187. Thus, since there may be circumstances where a police officer's reasonable good faith belief that a person authorizing a search has the authority to do so, such a good faith belief may mean the search itself is reasonable under the Fourth Amendment.

## Article I, Section 7

¶12 Unlike in the Fourth Amendment, the word "reasonable" does not appear in any form in the text of article I, section 7 of the Washington Constitution. We have also long declined to create "good faith" exceptions to the exclusionary rule in cases in which warrantless searches were based

on a reasonable belief by law enforcement officers that they were acting in conformity with one of the recognized exceptions to the warrant requirement. *State v. White*, 97 Wn.2d 92, 110, 640 P.2d 1061 (1982) ("the language of our state constitutional provision . . . shall not be diminished by . . . a selectively applied exclusionary remedy"). We have also repeatedly held that article I, section 7 provides greater protection of individual privacy than the Fourth Amendment. *E.g., State v. Jackson*, 150 Wn.2d 251, 259, 76 P.3d 217 (2003); *State v. Jones*, 146 Wn.2d 328, 332, 45 P.3d 1062 (2002); *State v. Vrieling*, 144 Wn.2d 489, 495, 28 P.3d 762 (2001); *see also* Charles W. Johnson, *Survey of Washington Search and Seizure Law: 2005 Update*, 28 SEATTLE U. L. REV. 467, 587 (2005).

¶13 Under article I, section 7, whether a person can consent to the search of a premises is based upon that person's independent authority to so consent and the reasonable expectation of his co-occupant about that authority. First, the consenting party must be able to permit the search in his own right. Second, it must be reasonable to find that the defendant has assumed the risk that a co-occupant might permit a search. *State v. Mathe*, 102 Wn.2d 537, 543-44, 688 P.2d 859 (1984). "In essence, an individual sharing authority over an otherwise private enclave inherently has a lessened expectation that his affairs will remain only within his purview, as the other cohabitants may permit entry in their own right." *Leach*, 113 Wn.2d at 739. In short, while under the Fourth Amendment the focus is on whether the police acted reasonably under the circumstances, under article I, section 7, we focus on expectations of the people being searched and the scope of the consenting party's authority.

¶14 In *Leach*, we analyzed common authority in terms of "control" over the premises. *Leach,* 113 Wn.2d at 739. The right of control may be based upon consent by one with an equal or superior interest in the premises or upon some independent authority. The touchstone of the inquiry is that the person with common authority must have free

access to the shared area and authority to invite others into the shared area. That access must be significant enough that it can be concluded that the nonconsenting co-occupant assumed the risk that the consenting co-occupant would invite others into the shared area. When a guest is more than a casual visitor and has " 'run of the house,' " her lesser interest in the property is sufficient to render consent to search effective only as to the areas of the home "where a visitor would normally be received." 4 WAYNE R. LAFAVE, SEARCH AND SEIZURE § 8.5(e), at 235 (4th ed. 2004). *Cf. State v. Hoggatt*, 108 Wn. App. 257, 30 P.3d 488 (2001) (defendant assumed the risk that cohabitant would allow entry to others into common areas of the apartment, such as the living room, but not into private areas such as the bedroom). Likewise, the scope of consent given must not exceed the scope of the consenting person's authority. A person may have free access to some areas of the premises but not all areas. For example, the possessor of a home may share control and access to areas such as the kitchen, the dining room, the living room, and the bathroom but not other, private areas such as the possessor's bedroom, office, basement, or attic. The existence and scope of common authority is a legal question which must be determined by the court based upon the facts of each case.

¶15 This court has never used the words "apparent authority" in the context of a cohabitant's authority to consent to a search. However, the Court of Appeals based its opinion below, in part, on an earlier case of that court interpreting the Fourth Amendment. *See State v. Holmes*, 108 Wn. App. 511, 519, 31 P.3d 716 (2001). In *Holmes*, the court stated that a person has apparent authority to consent to search if he or she "appears to have authority, so long as police have a *reasonable* belief in the authority of the person giving consent." *Id.* (emphasis added). Finding that the officers' subjective belief about the consenting party's authority was unreasonable, the *Holmes* court determined that even if the doctrine of apparent authority existed under the Washington Constitution, a question the

court explicitly declined to answer, *Holmes*, 108 Wn. App. at 518 n.20, that subjective belief did not validate the objectively unreasonable warrantless search. We pick up where the *Holmes* court left off by holding that, standing alone, a police officer's subjective belief made in good faith about the scope of a consenting party's authority to consent cannot be used to validate a warrantless search under article I, section 7.

¶16 In this case, the court below erroneously applied the doctrine of "apparent authority" to article I, section 7. This may have been done because in *Mathe* we adopted the "common authority" test used under the Fourth Amendment, *see United States v. Matlock*, 415 U.S. 164, 171, 94 S. Ct. 988, 39 L. Ed. 2d 242 (1974), as the proper guide for determining questions of consent under article I, section 7. *Mathe*, 102 Wn.2d at 543. *Matlock*, however, did not involve the doctrine of apparent authority but rather whether a wife who was a cohabitant with her husband had *actual* authority over the marital residence. Because our constitution focuses on the rights of the individual rather than on the reasonableness of the government action, the apparent authority doctrine, as articulated in *Rodriguez* and applied in the Fourth Amendment context, is not appropriate to any analysis under article I, section 7.[3]

---

[3] We note that "apparent authority" as used to analyze common authority under the Fourth Amendment is quite different than "apparent authority" as used in agency law. Under principles of agency, an agent can bind a principal when he or she has either actual or apparent authority to do so. *King v. Riveland*, 125 Wn.2d 500, 507, 886 P.2d 160 (1994). Actual authority is based on the principal's objective manifestation to the agent, and apparent authority stems from the principal's objective manifestation to a third party. A party asserting apparent authority must prove that he or she actually believed that the agent had authority to bind the principal and that his or her belief is objectively reasonable. *Id.*

The United States Supreme Court's analysis under the Fourth Amendment seems to focus only on the second prong of apparent authority—that a party asserting apparent authority has a reasonable objective belief that the agent has authority. While we are reluctant to inject the words "apparent authority" into our article I, section 7 jurisprudence, we note that the application of the first prong of apparent authority according to agency principles may be useful in analyzing a cohabitant's authority under article I, section 7. For example, it might be appropriate to ask whether the principal, by his conduct, objectively manifested to third parties (the police) that that person had common authority over the premises. Evidence of such objective manifestations might include, for example,

COMMON AUTHORITY WHERE A COHABITANT IS PRESENT

¶17 The State argues that Dangel had common authority to consent to a search of the premises and that when they came upon Morse, the police officers had no duty to obtain his consent. The State argues that it was Morse's affirmative duty to explicitly object to the search. It is essentially the State's position that Morse was not present in his own apartment until police found him. While such a suggestion may make sense from the perspective of the Fourth Amendment's "reasonableness" requirement, simply inquiring into whether a police officer's subjective beliefs are reasonable is not sufficient under article I, section 7.

¶18 We have been quite explicit that under our constitution, the burden is on the police to obtain consent from a person whose property they seek to search. In obtaining that consent, police are required to tell persons from whom they are seeking consent that they may refuse to consent, may revoke consent, or may limit the scope of consent. *State v. Ferrier*, 136 Wn.2d 103, 118, 960 P.2d 927 (1998). We have never held that a cohabitant with common authority can give consent that is binding upon another cohabitant with equal or greater control over the premises when the nonconsenting cohabitant is actually present on the premises. We have never held that a person is not present in her home unless and until the police come upon her. We decline to do so now.

¶19 In *Leach*, we held that where the police have obtained consent to search from an individual possessing, at best, equal control over the premises, "that consent remains valid against a cohabitant, who also possesses equal control, only while the cohabitant is absent." *Leach*, 113 Wn.2d at 744. In *Walker*, Mrs. Ellen Walker consented to a search of her home. Before the search began, however, Mr. Gus

permitting a person to live at the premises, giving the person a key to the premises, permitting the person to share in the expenses of the premises, or permitting the person to invite guests into the premises.

Walker, Mrs. Walker's husband, arrived. The police failed to obtain Mr. Walker's consent to search and he did not affirmatively object to the search. Contraband was found in the couple's bedroom. Only Mrs. Walker was convicted and she argued, relying on *Leach*, that without her husband's consent, the search was invalid as against her. While we rejected her argument, we concluded the following about *Leach*: "It follows from [*Leach*] that because Ellen and Gus were cohabitants and both present during the search, Ellen's consent to the search was invalid as to Gus." *Walker*, 136 Wn.2d at 684.

¶20 In the case before us, Morse was the sole signatory on the lease and the sole tenant in the apartment searched. As guests in Morse's apartment for five days, Dangel and her husband had limited control and, therefore, limited authority over that portion of the apartment they shared with Morse. The record, however, is unclear as to the precise scope of their authority. There is certainly insufficient evidence in the record to support a conclusion that the Dangels shared control over Morse's bedroom. Moreover, since Morse was at all times present in his apartment,[4] the State must prove that Dangel had greater authority over the areas of the premises searched in order to consent to a search that would bind Morse. We hold that the State has failed to meet its burden and that Dangel's consent to search was ineffective as to Morse. Since there is insufficient evidence to support the conviction without the fruits of the unlawful search, we reverse Morse's conviction.

## CONCLUSION

¶21 The Washington Constitution guarantees to its citizens that they will neither be disturbed in their private affairs, nor have their homes invaded, without authority of

---

[4] "Present" is defined as "being in one place and not elsewhere: being with reach, sight, or call or within contemplated limits." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1793 (1993). Since the door to Morse's bedroom was "less than ten feet" from the front door of the apartment, Report of Proceedings at 10, Morse was certainly within "reach" or "call" of the officers while they stood at his front door.

law. CONST. art. I, § 7. Warrantless searches are per se unreasonable. *Hendrickson*, 129 Wn.2d at 70. While consent is a recognized exception to the warrant requirement, all such exceptions are narrowly drawn. *Reichenbach*, 153 Wn.2d at 131. Common authority to consent to a search is based upon authority to control the premises. A cohabitant who has common authority to use and control the premises has authority to consent to a search that is within the scope of that authority. Authority to control is determined by the shared use of the premises, the reasonable expectations of privacy, and the degree to which a cohabitant has assumed the risk that others will consent to a search. The scope of the authority of a cohabitant to consent extends only to areas shared by the cohabitants. When a cohabitant who has equal or greater authority to control the premises is present, his consent must be obtained and the consent of another of equal or lesser authority is ineffective against the nonconsenting cohabitant. "Presence" is used according to its ordinary meaning. A person is not absent just because the police fail to inquire, are unaware, or are mistaken about the person's presence within the premises. If the police choose to conduct a search without a search warrant based upon the consent of someone they believe to be authorized to so consent, the burden of proof on issues of consent and the presence or absence of other cohabitants is on the police.[5] *Acrey*, 148 Wn.2d at 746.

¶22 Robert Morse was present in his home when police arrived at his door without a search warrant and looking for someone else. Despite his actual presence, police failed to get Morse's consent to search his apartment. Instead, they relied upon the consent of a houseguest who lacked the

---

[5] We recognize that issues of "common authority" and "presence" will not always be simple and straightforward. It may be difficult to determine, for example: (1) whether a child has "common authority" over her parent's home sufficient to authorize that child to consent to a warrantless search, (2) whether a farmer operating a tractor on his back forty is "present" when the police arrive at the front door of his farmhouse, or (3) whether an employee at a factory has authority to consent for an employer who is on the factory's campus, but in a another building at the time. However, such difficulties may be avoided by the police by obtaining either a search warrant or the consent of the person whose property is to be searched.

authority to consent to a search of Morse's home that would bind Morse under the Washington Constitution. Because the search of Morse's apartment did not satisfy the requirements of article I, section 7 of the Washington Constitution, nor did police obtain valid waiver of those requirements by an effective consent, the search of Morse's home was unlawful, and the fruits of that search should have been suppressed. We therefore reverse the courts below and reverse the conviction.

C. JOHNSON, MADSEN, SANDERS, OWENS, and J.M. JOHNSON, JJ., concur.

¶23 FAIRHURST, J. (concurring) — Like the majority, I would find the search invalid, but I use our established Fourth Amendment analysis to determine that Pam Dangel did not have authority to consent to the search of Robert Morse's apartment.

¶24 We have expressly adopted the federal analysis under the Fourth Amendment for consent to search questions.[6] *State v. Mathe*, 102 Wn.2d 537, 543, 688 P.2d 859 (1984) (citing *United States v. Matlock*, 415 U.S. 164, 170-71, 94 S. Ct. 988, 39 L. Ed. 2d 242 (1974)). The Fourth Amendment generally prohibits the warrantless entry into a person's home to conduct a search. *Illinois v. Rodriguez*, 497 U.S. 177, 181, 110 S. Ct. 2793, 111 L. Ed. 2d 148 (1990). We recognize certain limited exceptions to this general prohibition, however, and the State "bears the burden of showing a warrantless search falls within one of these exceptions." *State v. Thompson*, 151 Wn.2d 793, 802, 92 P.3d 228 (2004).

---

[6] Although the majority correctly notes our conclusion that article I, section 7 provides greater protection of individual privacy than the Fourth Amendment, we have never analyzed that protection in the context of consent to search questions. Majority at 10. We do not consider the constitutionality of a claim under the Washington Constitution unless a party provides the independent analysis required by *State v. Gunwall*, 106 Wn.2d 54, 61-62, 720 P.2d 808 (1986). *State v. Ferrier*, 136 Wn.2d 103, 110, 960 P.2d 927 (1998). Because neither party addressed this question until the supplemental briefs to this court and because it can be resolved based on our existing consent to search jurisprudence, we should decline to reach the question.

¶25 One exception to the warrant requirement is consent. *Id.* at 803. To meet its burden of showing that consent was valid, the State must show that (1) the consent was voluntary, (2) the person giving consent had authority to consent, and (3) the search did not exceed the scope of the consent. *Id.* This case presents only the question of whether the second prong of the test has been met. Initially, we must determine whether Dangel had authority to consent to a search of any part of Morse's apartment. If she did, we must determine the effect, if any, on the police officers' encounter with Morse in the bedroom.

¶26 Because the State did not show that Dangel had either actual common authority or apparent authority to permit the police officers to search Morse's apartment, the entire search was invalid.

## ISSUES

¶27 A. Did Dangel have common authority over Morse's apartment?

¶28 B. Did Dangel have apparent authority to consent?

¶29 C. What was the effect, if any, of the encounter with Morse in his bedroom?

## ANALYSIS

A. Common authority

¶30 A third party may consent to a search of premises only if that person has "common authority" over the premises. *Mathe,* 102 Wn.2d at 543. A person has common authority over the premises (1) if that person is able to permit the search in his or her own right and (2) if the nonconsenting party has assumed the risk that the other person might permit a search. *Thompson,* 151 Wn.2d at 804. " 'Common authority' " is based on the " 'mutual use of the property by persons generally having joint access or

18

control for most purposes.' "[7] *Rodriguez*, 497 U.S. at 181 (quoting *Matlock*, 415 U.S. at 171 n.7). The third party's interest is not merely a property interest, but a recognition that "any of the co-inhabitants has the right to permit the inspection." *Matlock*, 415 U.S. at 171 n. 7. To qualify as a coinhabitant, the State must show that the person had "equal control over the premises." *Thompson*, 151 Wn.2d at 805.

¶31 We have found that a person had common authority where both parties were signatories on the lease for the premises or where the premises were jointly occupied by a husband and wife. *State v. Leach*, 113 Wn.2d 735, 738, 782 P.2d 1035 (1989) (cotenants); *State v. Walker*, 136 Wn.2d 678, 681, 965 P.2d 1079 (1998) (husband and wife). We have found that there was not common authority where a son was living on only a portion of his parents' property and did not pay rent. *See, e.g., Thompson*, 151 Wn.2d at 806. In *Rodriquez*, the United States Supreme Court held that the defendant's former roommate did not have common authority because, although she had a key, she never went to the house when Rodriguez was not home, her name was not on the lease, and she did not pay rent.

¶32 To find that Dangel, a temporary guest, had common authority over Morse's apartment, we would have to conclude that she exercised such joint control over Morse's apartment that she could be considered a coinhabitant. The record does not support such a conclusion. Although the record suggests that Dangel was free to move about the apartment and go into any room, it also indicates that Dangel was staying at the apartment for only seven days and that she did not pay any rent. The record is silent as to whether Dangel had a key to the apartment or whether she was dependent on Morse for access. On balance, Dangel's control over the apartment is far more analogous to that of

[7] Authority to consent under the common authority test refers to the person's authority *in fact*, or actual authority, as opposed to the authority that a police officer might reasonably believe the person has, or apparent authority. *See Rodriguez*, 497 U.S. at 181-82.

the former roommate in *Rodriguez* and the son in *Thompson* than it is to the cotenant in *Leach* or the wife in *Walker*. For these reasons, Dangel did not meet the criteria of a coinhabitant and she did not have common authority over the premises. Because Dangel did not meet the criteria of a coinhabitant, we need not decide whether Morse assumed the risk that she would consent to a search of his apartment.

B. Apparent authority to consent

¶33 If a third party does not have common authority over the premises, consent may still be valid if the third party had "apparent" authority to consent. *Rodriguez*, 497 U.S. at 188. *Rodriquez* established a two pronged test for determining whether a third party has apparent authority. A third party has apparent authority to consent if " 'the facts *available to the officer at the moment* . . . warrant a man of reasonable caution in the belief' that the consenting party had authority over the premises." *Id.* (emphasis added) (internal quotation marks omitted) (quoting *Terry v. Ohio*, 392 U.S. 1, 21-22, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968)). However, if the surrounding circumstances are such that a reasonable person would doubt that the consent was valid, police officers must conduct further inquiry. *Id.*

¶34 The majority is correct that this court has never explicitly applied the apparent authority test with reference to a consent to search question. Majority at 11. The Washington Court of Appeals and courts in other jurisdictions have applied the federal apparent authority test, however, and although those rulings are not binding on this court, they provide insight into the application of the test.

¶35 Division One of the Court of Appeals has held that a temporary guest does not have apparent authority to admit police officers to conduct a search or execute an arrest warrant. *State v. Holmes*, 108 Wn. App. 511, 519-20, 31 P.3d 716 (2001) (because the person who claimed to be a coinhabitant did not have a key, police officers should have doubted her authority to consent, despite her *explicit assur-*

*ance that she lived there)*; *State v. Ryland*, 65 Wn. App. 806, 829 P.2d 806 (1992) (a houseguest who had spent the previous night on the living room couch did not have apparent authority because the officer did not inquire into the extent of the guest's authority).

¶36 Other jurisdictions that have applied the apparent authority test have reached conflicting conclusions, however. Apparent authority has been found when the third party provided police officers with indicia of authorization prior to being admitted, or when the third party's relationship to the defendant suggested such authority. *Flanagan v. State*, 440 So. 2d 13, 15 (Fla. Dist. Ct. App. 1983) (third party who engaged in lengthy negotiations with police prior to allowing them to enter trailer had apparent authority); *People v. Shaffer*, 111 Ill. App. 3d 1054, 1059, 444 N.E.2d 1096, 1099, 67 Ill. Dec. 612 (1982) (defendant's brother, although not an occupant of "indefinite duration," was not merely a casual visitor); *Nix v. State*, 621 P.2d 1347, 1350 (Alaska 1981) (defendant's friend, who occasionally spent the night at the apartment, had apparent authority to admit defendant's sister accompanied by an undercover police officer).

¶37 Courts in other jurisdictions have concluded that a third party did not have apparent authority when the police made no inquiry about the third party's authority prior to entering. *State v. Buhler*, 137 Idaho 685, 52 P.3d 329, 332-33 (Ct. App. 2002) (tenant's guest did not have apparent authority because police did not know how long he had been there, whether he had a key, or whether he had free access to the premises); *People v. Pickens*, 275 Ill. App. 3d 108, 655 N.E.2d 1206, 1210, 211 Ill. Dec. 823 (1995) (officers could not accept at face value a consenting party's apparent assumption that he has authority; police should have inquired further into social guest's authority). In addition, one federal district court has held that a defendant's girl friend did not have apparent authority to permit a search of his apartment when the police failed to make further inquiry about the girl friend's claim that she was autho-

rized. *United States v. Gonzalez Athehorta*, 729 F. Supp. 248, 258 (E.D.N.Y. 1990).

¶38 In this case, nothing that Dangel did or said would give a reasonable person the belief that she had authority to consent to a search of the premises. Both parties agree that the police officers asked Dangel just two questions when she answered the door: if Ms. Wall was in the apartment, and if they could come in. Although the parties dispute whether Dangel actually told the officers they could enter, it is clear that the officers did not ask any questions that might elicit information about whether she was a resident of the apartment *before they entered.*

¶39 The record also shows that the officers knew from prior discussion with the apartment manager that Morse was the only person on the lease and the apartment manager thought Ms. Wall had departed because bounty hunters had been there several days earlier. In addition, it was not until after the officers had already entered the apartment that Dangel told the officers that she was staying at the apartment for about a week. Even then, the officers did not make any further inquiries to validate her authority over the premises. There was no indication that she had independent access to the apartment, received mail there, or shared expenses with Morse. Indeed, the only evidence in the record that even suggests Dangel had authority to let the police enter was a statement she made during the suppression hearing. However, that statement was made long after the event and has no bearing whatever on what the officers may have believed *at the time*.

¶40 Based on the above analysis, the officers were not justified in believing that Dangel had apparent authority to consent to a search of any part of Morse's apartment.

C. Entry to Morse's bedroom

¶41 The *Mathe* common authority rule applies only when the nonconsenting coinhabitant is absent. *Thompson*, 151 Wn.2d at 804. If an equal coinhabitant is present and "able to object" at the time of the search, police must obtain

that person's consent as well for the search to be valid *as to him or her. Walker,* 136 Wn.2d at 683-84.

¶42 We have never addressed whether a coinhabitant with an inferior interest may consent to a search *as to a superior coinhabitant.* Nor have we considered what law enforcement officers must do if a coinhabitant is present but elsewhere on the premises when a search begins and the coinhabitant's presence is discovered *during the search.*[8] Neither question need be answered here, however, because Dangel was not a coinhabitant and did not have either common authority or apparent authority over the premises. Therefore, she was not authorized to allow the police officers to enter the apartment in the first place, much less enter Morse's bedroom.

## CONCLUSION

¶43 I concur with the majority's result but not its analysis. Because the State failed to show that Dangel met the Fourth Amendment tests for common authority or apparent authority over Morse's apartment, the search of Morse's apartment was invalid as to him.

ALEXANDER, C.J., and BRIDGE, J., concur with FAIRHURST, J.

---

[8] The most comparable situation we have considered to date was a case in which a husband arrived at the premises he shared with his wife while police were in the process of conducting a search that had been permitted by his wife. *Walker,* 136 Wn.2d at 681. We held that the wife's consent was invalid as to the husband even though the husband did not object to the search at the time.