[No. 33988-9-II.   Division Two.   June 26, 2007.]

THE STATE OF WASHINGTON, *Respondent*, v. GREGORY BERNHART HAAPALA, *Appellant*.

*Jodi R. Backlund* and *Manek R. Mistry* (of *Backlund & Mistry*), for appellant.

*Philip J. Buri* (of *Buri, Funston, Mumford PLLC*), for respondent.

¶1 Armstrong, J. — Gregory Bernhart Haapala appeals his convictions for possessing methamphetamine and intimidating a witness, arguing that police officers could not enter and search the common areas of the house and the room where Haapala was sleeping without his permission as a cohabitant of the residence. He contends that without the evidence the officers saw in his room, they lacked probable cause for the search warrant they obtained after their initial entry into the house, and that, in any event, the warrant was overbroad. Haapala also argues that the trial court should have inquired into a conflict of interest between him and his trial counsel and that his counsel should have withdrawn as his attorney. He further contends that the trial court's "reasonable doubt" instruction misstated the State's burden of proof. Finally, Haapala argues that the trial court erred in calculating his offender score when it included a 1992 conviction that should have washed out. We agree with Haapala that the trial court miscalculated his offender score. Otherwise, we find no reversible error. We affirm Haapala's convictions but remand for the trial court to resentence him.

## FACTS

¶2 Elizabeth "BJ" Cornett lived across the street from the house that Don Craig rented. After noticing increased traffic on the street, Cornett listed 29 vehicles that stopped at Craig's residence over two days. Cornett gave the list to the police.

¶3 In response, Detective Miller and Sergeant Stringer visited the house to talk with Craig to ask permission to search the residence for drug-related activity. When Detective Miller and Sergeant Stringer arrived, Craig was in the driveway preparing to tow a car. Craig gave the officers permission to search the house, explaining that he did not know everyone inside but that they were all guests and not necessarily living there.

¶4 Craig led the officers to a basement bedroom where a man and woman were sleeping. When Detective Miller entered the bedroom, he saw a glass methamphetamine pipe on the dresser. The man and woman said they knew nothing about the pipe and that it was not theirs. But when Detective Miller turned his back to them, the woman jumped out of bed, grabbed the pipe, and tried to break it by throwing it into a garbage can. At that point, the officers decided to apply for a search warrant for the residence and began clearing everybody out of the house.

¶5 Detective Miller and Craig went upstairs to wake up Greg Haapala and to tell him to leave the house. Detective Miller entered the room and saw a marijuana smoking device. The detective woke Haapala and told him to get dressed and leave the house. When Haapala got up to go to the bathroom, Detective Miller followed him. In the bathroom, he saw two methamphetamine pipes and a small plastic scale, which, according to Detective Miller, drug dealers commonly use to weigh drugs.

¶6 After clearing everyone out of the house, Detective Miller called a magistrate to request a warrant to search the residence. Detective Miller outlined his training and experience and explained the factual basis for the warrant, specifically the high traffic volume, the methamphetamine pipe in the downstairs bedroom, the marijuana pipe in Haapala's bedroom, and the two methamphetamine pipes and the scale in the bathroom. Detective Miller also stated that several people in the house had criminal histories involving drug activity. Finding probable cause, the magistrate issued the search warrant.

¶7 While executing the search warrant, police discovered methamphetamine in Haapala's room and approximately 200 grams of marijuana in the attic above Haapala's room. The State charged Haapala with unlawful possession of methamphetamine and felony possession of marijuana.

¶8 Before trial, Haapala threatened to harm Craig if he did not take the blame for the drugs. Haapala told Craig to call Haapala's attorney and explain that due to the large

volume of people coming in and out of the house, the drugs could have belonged to anyone. Craig made the phone call, but he did not tell Haapala's attorney that Haapala had threatened him. After learning that Haapala had threatened Craig, the State filed an amended information, adding one count of intimidating a witness.

¶9 The jury convicted Haapala of unlawful possession of methamphetamine and intimidating a witness but acquitted him of unlawful possession of marijuana.

## ANALYSIS

### CONSENT TO A SEARCH

¶10 Haapala argues that as a cohabitant he had at least equal authority as Craig over the home's common areas and, therefore, the police could not enter and search without his consent.

¶11 Article I, section 7 of the Washington Constitution forbids warrantless searches unless the search falls within one of the narrowly drawn exceptions to the warrant requirement. *State v. Evans*, 159 Wn.2d 402, 407, 150 P.3d 105 (2007) (citing *State v. Chrisman*, 100 Wn.2d 814, 817, 676 P.2d 419 (1984)). The State bears the burden of establishing a warrantless search's validity. *Evans*, 159 Wn.2d at 407 (citing *State v. Hendrickson*, 129 Wn.2d 61, 71-72, 917 P.2d 563 (1996)). Consent to a search that police lawfully obtain from a person with authority to give such consent is one exception to the warrant requirement. *State v. Morse*, 156 Wn.2d 1, 8, 123 P.3d 832 (2005).

### Craig's Consent to Search the Residence

¶12 Haapala argues that Craig vacated the residence before the search and that he "ceded the property" to Haapala before the search. Br. of Appellant at 20. Thus, according to Haapala, Craig lacked authority to consent to a search of the residence.

¶13 Consent to search a premises is valid, under the common authority rule, where (1) the consenting party has

the legal authority to permit the search and (2) it is reasonable for a court to find that the defendant has assumed the risk that a cohabitant might permit a search. *Morse*, 156 Wn.2d at 10 (citing *State v. Mathe*, 102 Wn.2d 537, 543-44, 688 P.2d 859 (1984)). A person with a sufficient amount of control may have common authority over the premises. *See Morse*, 156 Wn.2d at 10 (citing *State v. Leach*, 113 Wn.2d 735, 739, 782 P.2d 1035 (1989)). But if two cohabitants with equal authority over common areas are present, the police must obtain consent from each cohabitant. *Morse*, 156 Wn.2d at 13.

¶14 The critical inquiry is whether the person with common authority has free access to the searched area and has the authority to invite others into that area. *Morse*, 156 Wn.2d at 10-11. "A person may have free access to some areas of the premises but not all areas." *Morse*, 156 Wn.2d at 11. For example, a person may share control and access to the kitchen, the dining room, the living room, and the bathroom, but not other, private areas such as the person's bedroom. *Morse*, 156 Wn.2d at 11.

¶15 According to Lynda Spindor, the landlord, Craig was the only signatory on the lease, but several additional tenants lived in the house to share the rent obligation. Haapala moved into the upstairs bedroom on January 1 or 2, 2005, when Craig was moving out of that bedroom. Haapala asked Spindor to extend the lease with him as the tenant, but she refused. Due to complaints from neighbors, on January 15, 2005, Spindor served Craig with an eviction notice that gave Craig three days to vacate the premises. Police searched the house on January 19, 2005.

¶16 The trial court found that although Craig was being evicted, he was the only person on the lease and he "still had furniture and other possessions in the house and his car was visible outside of the house." Clerk's Papers (CP) at 74. From that finding, it concluded that "Craig, as the person who rented the home, . . . had the authority to consent to the [initial] search." CP at 77. The record shows that Craig retained sufficient access and control over the

residence to consent to a search of the common areas, including the downstairs bedroom. *See Morse*, 156 Wn.2d at 10-11.

¶17 When Detective Miller arrived, Craig was in the front yard preparing to tow a car. Craig told Detective Miller that although "there was an eviction in . . . progress, [Craig] was still in control of the house" and that everyone in the house was a guest. Report of Proceedings at 81. Craig was at the house four days earlier when Spindor served him with the eviction notice. Although Craig began moving out on January 1 or 2, he still had furniture in the house and his car was in front of the house. Given this free access and control over certain areas in the house, Craig had authority to consent to a search of those areas. *See Morse*, 156 Wn.2d at 10-11 (the critical inquiry is whether the person with common authority has free access to the searched area and has authority to invite others into that area).

¶18 The dissent states that Craig did not have authority to consent to a search of the house because Craig—as a holdover tenant subject to an unlawful detainer action— was unlawfully in possession of the premises. But the fact that Craig was an unlawful detainer[1] does not automatically strip him of the ability to consent to a search of a house he possessed and used. *See United States v. Dubrofsky*, 581 F.2d 208, 212 (9th Cir. 1978) (authority justifying consent to search need only rest on mutual use of the property) (citing *United States v. Gulma*, 563 F.2d 386, 389 (9th Cir. 1977)). Spindor still needed to file an unlawful detainer action and obtain a court's order to force Craig to vacate the premises. RCW 59.12.040-.080. And Spindor could not have taken possession of the house during the unlawful detainer action's pendency unless she received a writ of restitution from the court. RCW 59.12.090. Even

---

[1] A tenant is guilty of unlawful detainer when "he . . . commits or permits waste upon the demised premises, or when he . . . maintains on or about the premises any nuisance, and remains in possession after the service . . . upon him . . . of three days' notice to quit." RCW 59.12.030(5). Spindor served Craig a notice to vacate on the grounds of waste and nuisance.

then, Craig could have filed a bond with the court to stay enforcement of the writ of restitution and to retain possession of the premises until the unlawful detainer action concluded. RCW 59.12.100. Thus, Craig, as a user and possessor of the house, would have had the authority to consent to a search of the common areas until the court ordered him to vacate the premises.

¶19 The question remains whether Haapala established that he was a cohabitant with equal rights to control over common areas. If so, the police could enter and search the house common areas only with both Haapala's and Craig's permission. *See Morse*, 156 Wn.2d at 13. Courts have found cohabitants with equal rights to control where a boyfriend lives with his girl friend in a house she leased, *State v. Hoggatt*, 108 Wn. App. 257, 269, 30 P.3d 488 (2001); where a husband and wife live on the premises, *State v. Walker*, 136 Wn.2d 678, 686, 965 P.2d 1079 (1998) (wife's consent not effective as waiver of present husband's right to be free from invasion of privacy); and where an employer held his girl friend out to be a cosignatory of the lease and a coowner of the searched premises, *Leach*, 113 Wn.2d 735. Haapala does not fit within any of these categories.

¶20 Haapala is more akin to the defendant in *State v. Thompson*, 151 Wn.2d 793, 92 P.3d 228 (2004). In *Thompson*, our Supreme Court held that the defendant was not a cooccupant with equal rights of control over a boathouse on his parents' property even though he lived on his parents' property and used the boathouse to store items. *Thompson*, 151 Wn.2d at 806. In that case, the defendant lived rent-free on his parents' property in a trailer that his parents owned. *Thompson*, 151 Wn.2d at 806. Although the defendant's parents allowed him to store items in their boathouse, they did not make the boathouse available to the defendant for his exclusive use. *Thompson*, 151 Wn.2d at 806. And nothing in the record showed that the defendant was ever in exclusive control of the boathouse. *Thompson*, 151 Wn.2d at 806-07. Rather, the defendant's use of the

boathouse "was clearly dependent upon the permission of the owners." *Thompson*, 151 Wn.2d at 806. Thus, our Supreme Court held that the defendant was not a cooccupant with equal access and control because, "while [the defendant] and his parents each had access to the boathouse, his right to access, as a nonoccupying nonowner, was subordinate to his parents[']." *Thompson*, 151 Wn.2d at 806.

¶21 Unlike the defendant in *Thompson*, Haapala occupied the searched area. Nonetheless, Haapala had no right to occupy and access the house. Haapala moved to the home in early January. He knew that Craig was being evicted and asked the landlord to lease the premises to him. The landlord refused. Thus, at the time of the search, Craig was the only named tenant on the lease and the only person who had the landlord's permission to reside at the premises. Craig described Haapala and the others in the house as "guests," not cotenants. Haapala presented no evidence to the contrary, and although he now argues that he was a sublessee, the record does not support the claim. Craig did not testify that Haapala was paying him rent or that they had any agreement that Haapala was a subtenant. We conclude that Haapala was not a cohabitant with equal rights of control over the common areas.

¶22 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

HUNT, J., concurs.

¶23 PENOYAR, J. (dissenting) — I must respectfully dissent. The search of the residence where Haapala was staying is based on Craig's authority to authorize the search. While it appeared to the officers that Craig had the authority to authorize a search, Craig was not lawfully on the property. Craig's landlord served him with an eviction

notice on January 15 that gave Craig three days to vacate the premises. On January 19, the day of the search, Craig was holding over unlawfully and was subject to an unlawful detainer action. RCW 59.16.010.[2]

¶24 A police officer's good faith subjective belief that a consenting party has authority to authorize a search is insufficient to validate a warrantless search under article I, section 7 of the Washington Constitution. *State v. Morse*, 156 Wn.2d 1, 12, 123 P.3d 832 (2005). Thus, the fact that Craig was unlawfully in possession of the premises prevents any reliance on his consent to search, at least as to third parties such as Haapala. Since Craig himself was not lawfully on the premises, he certainly had no lawful authority to allow a search. All evidence seized was the result of this initial unlawful entry and should be suppressed. I would reverse and remand for dismissal.

Review denied at 163 Wn.2d 1016 (2008).

---

[2] RCW 59.16.010 provides that:

[A]ny person who shall, without the permission of the owner and without having any color of title thereto, enter upon the lands of another, and shall refuse to remove therefrom after three days' notice, shall be deemed guilty of unlawful detainer and may be removed from such lands.