# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 75317-7-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| ERIC CHRISTIAN ARNESON, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: April 23, 2018 |
| | ) | |

COURT OF APPEALS DIV 1 STATE OF WASHINGTON FILED 2018 APR 23 AM 9:22

MANN, A.C.J. — Eric Arneson appeals his conviction for two counts of felony violation of a court order—domestic violence, under RCW 26.50.110. Arneson argues that he was denied his right to a unanimous jury verdict because the jury was not instructed that it must unanimously agree on which of the underlying alternative acts it relied upon for each conviction. Because RCW 26.50.110 is an alternative means crime and sufficient evidence of each alternative means was submitted to the jury, we affirm.

## FACTS

In September 2015, Colette Garcia moved into a house leased by Arneson after being introduced to him by a mutual friend. Garcia had her own room in the house and Arneson did not ask her to sign a lease or pay rent. Garcia and Arneson soon became romantically involved.

In October 2015, Garcia and Arneson got into an argument and Arneson told Garcia to move out. Arneson began destroying some of Garcia's property, so she called the police, who arrested Arneson for malicious mischief. On October 20, 2015, Garcia obtained a court order prohibiting Arneson from having contact with her. The court order provided Garcia with sole access to the house.

Garcia testified that a week later, Arneson entered the house, grabbed her by the hair, dragged her onto the ground, and kicked her in the ribs. He then left. Garcia called the police, but Garcia was not cooperative when they responded. After the police left, Garcia remained in the house and fell asleep. Arneson again entered the house and attacked Garcia by dragging her off the couch on to the floor, striking her head against the floor, kicking her, and choking her. Garcia walked to a neighbor's house and called the police again. The police responded, but did not find Arneson at the house. Garcia was treated by medical personnel at the scene and then transported to the hospital for further treatment. She had bruises on her face, arms and ribs, cuts to her face and red marks around her neck. Photographs taken the next day showing her injuries were admitted at trial.

After being discharged from the hospital the next day, Garcia called police and requested a civil standby at the house in order to remove her belongings. Garcia told police they could enter the house to make sure Arneson was not present. Police found Arneson asleep and arrested him.

Arneson was charged by amended information with two counts of felony violation of a court order—domestic violence under RCW 26.50.110. Although generally a gross misdemeanor, a violation of RCW 26.50.110 is a class C felony if (1) the defendant's

conduct was an assault or was reckless and created a substantial risk of death or serious physical injury to another person, pursuant to RCW 26.50.110(4) or (2) the offender has at least two previous convictions for violating a court order, pursuant to RCW 26.50.110(5).

During trial, Arneson stipulated that he had two prior convictions, elevating the violations to felonies, so the jury would not hear details of the prior convictions. Jury instruction 14, the to-convict instruction for Count 1, provided:

> To convict the defendant of violation of a court order as charged in Count 1, separate and distinct from those alleged in Count 2, each of the following five elements of the crime must be proved beyond a reasonable doubt:
>
> (1) That on or about October 26, 2015, there existed a no-contact order applicable to the defendant;
>
> (2) That the defendant knew of the existence of this order;
>
> (3) That on or about said date, the defendant knowingly violated a provision of this order;
>
> (4) That
>
> (a) the defendant's conduct was an assault or
>
> (b) the defendant's conduct was reckless and created a substantial risk of death or serious physical injury to another person or
>
> (c) at the time of the violation, the defendant had twice been previously convicted for violating the provisions of a court order; and
>
> (5) That the defendant's act occurred in the State of Washington.
>
> If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty as to Count 1.
> If you find from the evidence that elements (1), (2), (3), and (5), and any of the alternative elements (4)(a), or (4)(b) or (4)(c), have been proved beyond a reasonable doubt, then it will be your duty to return a verdict of

guilty as to Count 1. To return a verdict of guilty, the jury need not be unanimous as to which of alternatives (4)(a), or (4)(b) or (4)(c), has been proved beyond a reasonable doubt as long as each juror finds that at least one alternative has been proved beyond a reasonable doubt.

On the other hand, if, after weighing all the evidence, you have a reasonable doubt as to any one of the five elements, then it will be your duty to return a verdict of not guilty as to Count 1.

Jury instruction 15, the to-convict instruction for Count 2, included the same language substituting Count 2 for Count 1.

A jury found Arneson guilty as charged. The jury also returned special verdicts finding that each felony violation of a court order involved domestic violence. Arneson appeals.

## ANALYSIS

*Unanimous Jury Verdict*

Arneson's primary argument on appeal is that he was denied his right to a unanimous jury verdict because the jury was not instructed that it must unanimously agree on which of the underlying acts it relied upon to support each conviction. We disagree.

Article 1, section 21 of the Washington State Constitution guarantees criminal defendants the right to a unanimous jury verdict. State v. Ortega-Martinez, 124 Wn.2d 702, 707, 881 P.2d 231 (1994). In certain situations, the right to a unanimous jury verdict includes the right to have express jury unanimity on the means by which the defendant is found to have committed the crime. Ortega-Martinez, 124 Wn.2d at 707. "In alternative means cases, an expression of jury unanimity is not required when each alternative means presented to the jury is supported by sufficient evidence." State v. Sandholm, 184 Wn.2d 726, 732, 364 P.3d 87 (2015).

The jury instructions presumed RCW 26.50.110 is an alternative means crime, not requiring unanimity. Arneson argues, for the first time on appeal, that his right to a unanimous jury verdict was violated when the court instructed the jury that it did not have to be unanimous as to whether the conviction rested on two prior violations or an assault. Arneson does not argue that the different means are not supported by sufficient evidence, instead, Arneson argues that RCW 26.50.110(4) and RCW 26.50.110(5) do not create alternative means, but instead define alternative acts each constituting a charge of violation of a court order.

Although Arneson did not object to the instruction below, "[a]n appellate court will consider error raised for the first time on appeal when the giving or failure to give an instruction invades a fundamental constitutional right of the accused, such as the right to a jury trial." State v. Green, 94 Wn.2d 216, 231, 616 P.2d 628 (1980); RAP 2.5(a)(3) (a party may raise a "manifest error affecting a constitutional right" for the first time on appeal); see also State v. Armstrong, 188 Wn.2d 333, 339, 394 P.3d 373 (2017). Therefore, we will consider this issue.

We review constitutional issues de novo. Armstrong, 188 Wn.2d at 339. The legislature has not defined what constitutes an alternative means crime or designated which crimes are alternative means crimes. This is left to judicial determination. State v. Peterson, 168 Wn.2d 763, 769, 230 P.3d 588 (2010). Each case must be determined on its own merits. State v. Owens, 180 Wn.2d 90, 96, 323 P.3d 1030 (2014).

RCW 26.50.110, titled "Violation of order – Penalties," states, in pertinent part,

(1)(a) Whenever an order is granted under this chapter, . . . and the respondent or person to be restrained knows of the order, a violation of

any of the following provisions of the order is a gross misdemeanor, except as provided in subsections (4) and (5) of this section:

. . .

(4) Any assault that is a violation of an order issued under this chapter, . . . and that does not amount to assault in the first or second degree under RCW 9A.36.011 or 9A.36.021 is a class C felony, and any conduct in violation of such an order that is reckless and creates a substantial risk of death or serious physical injury to another person is a class C felony.

(5) A violation of a court order issued under this chapter, . . . is a class C felony if the offender has at least two previous convictions for violating the provisions of an order issued under this chapter, . . . The previous convictions may involve the same victim or other victims specifically protected by the orders the offender violated.

RCW 26.50.110(1), (4), (5).

In State v. Kosanske, 23 Wn.2d 211, 213, 160 P.2d 541 (1945), our Supreme Court differentiated between alternative means and separate acts crimes, stating,

[T]here are two classes of criminal statutes to be considered. One class defines a specific crime, or makes a certain act or acts a felony or misdemeanor, or either, or both, and provides different ways in or means by which the crime may be committed, all in one statute, and the other class may set forth several distinct acts and make the commission of each a separate crime, all in one statute.

In determining whether RCW 26.50.110(4) and (5) creates alternative means, or separate acts, what must be ascertained is the legislature's intent—whether the legislature intended RCW 26.50.110 to define a single offense of violating a court order that is committable in more than one way, or to define several separate and distinct offenses that each could be chargeable as violating a court order. State v. Arndt, 87 Wn.2d 374, 378, 553 P.2d 1328 (1976); Owens, 180 Wn.2d at 96-97.

In Peterson, our Supreme Court gave the example of theft as an alternative means crime, which "may be committed by (1) wrongfully obtaining or exerting control

over another's property or (2) obtaining control over another's property through color or aid of deception." 168 Wn.2d at 769. The court explained "[t]he alternative means available to accomplish theft describe distinct acts that amount to the same crime . . . In each alternative, the offender takes something that does not belong to him, but his conduct varies significantly." Peterson, 168 Wn.2d at 770.

Here, RCW 26.50.110 makes it illegal to violate a court order, then RCW 26.50.110(4) and RCW 26.50.110(5) define distinct acts that could elevate that violation to a class C felony. In all circumstances, the offender is violating a court order, however, his conduct in doing so varies.

To hold, as Arneson suggests, that RCW 26.50.110(4) and RCW 26.50.110(5) define separate acts that each constitute a chargeable offense would permit charging the offender with multiple felonies for a single act of violating a court order. In this case, Arneson could be charged once for committing an assault in the process of violating a court order, and then be charged separately for having at least two previous convictions for violating other court orders. Doubt should be resolved against turning a single transaction into a multiple offense. Arndt, 87 Wn.2d at 385. We hold RCW 26.50.110(4) and (5) describe a single offense, violating a court order, with alternate means for elevating that offense to a class C felony.

Because RCW 26.50.110 is an alternative means crime, an expression of jury unanimity is not required when each alternative means presented to the jury is supported by sufficient evidence. Sandholm, 184 Wn.2d at 732. "Sufficient evidence is evidence adequate to justify a rational trier of fact to find guilt beyond a reasonable doubt." Ortega-Martinez, 124 Wn.2d at 708. The evidence is sufficient if "after viewing

-7-

the evidence in a light most favorable to the State, any rational trier of fact could have found the essential elements of the charged crime beyond a reasonable doubt." Ortega-Martinez, 124 Wn.2d at 708 (citing State v. Rempel, 114 Wn.2d 77, 82, 785 P.2d 1134 (1990)). Arneson does not argue that the alternative means were not supported by sufficient evidence. Viewing the evidence in the light most favorable to the State, there was sufficient evidence to support each alternative. We find no error.

*Statement of Additional Grounds*

Arneson also filed a pro se statement of additional grounds for review pursuant to RAP 10.10. The statement of additional grounds suffers generally from a misunderstanding of applicable law.[1] However, it does raise a number of legal issues, such as ineffective assistance of counsel, trial court error, and evidentiary errors. None have merit.

Our review of statements of additional grounds are subject to several practical limitations. For example, we consider only issues that adequately inform us of the nature and occurrence of the alleged errors and are not repetitive of briefing. RAP 10.10(a); State v. Alvarado, 164 Wn.2d 556, 569, 192 P.3d 345 (2008). We also do not consider issues that involve facts or evidence not in the record. Those issues are properly raised through a personal restraint petition, not a statement of additional grounds. Alvarado, 164 Wn.2d at 569.

---

[1] Many of Arneson's claims do not identify cognizable legal issues. For example, Arneson repeatedly accuses the witnesses, counsel, and the trial court of committing perjury, without evidence supporting these assertions. Arneson also accuses the trial court of bias. However, a trial court allowing evidence supporting a conviction of a defendant during a criminal trial does not demonstrate bias.

A.    Ineffective Assistance of Counsel

Arneson argues his trial counsel was ineffective for various reasons, such as in failing to admit certain evidence at the time of the CR 3.6 hearing, in deciding to stipulate to Arneson's past convictions for violating court orders, and in not objecting to a non-expert detective being permitted to testify to photographs taken of the victim.[2] "To prevail on a claim of ineffective assistance of counsel, a defendant must establish both ineffective representation and resulting prejudice." State v. McNeal, 145 Wn.2d 352, 362, 37 P.3d 280 (2002). There is a strong presumption of effective assistance. In re Detention of Moore, 167 Wn.2d 113, 122, 216 P.3d 1015 (2009). "Deficient performance is not shown by matters that go to trial strategy or tactics." State v. Studd, 137 Wn.2d 533, 551, 973 P.2d 1049 (1999).

Arneson fails to show that these actions were not part of a legitimate trial strategy. First, the evidence Arneson argues should have been admitted, proof of his lease at the property, was not pertinent to the issue of the CR 3.6 hearing, as nobody disputed that Arneson had a lease to reside at the property. Next, defense counsel's decision to stipulate to the previous convictions kept potentially prejudicial evidence from being presented to the jury. "[F]or strategic reasons, defendants charged with felony violation of a domestic violence no-contact order regularly stipulate to prior convictions that are elements of the charged crime in order to constrain the prejudicial effect on a jury." See State v. Case, 187 Wn.2d 85, 91, 384 P.3d 1140 (2016), as

_____

[2] Arneson also contends that defense counsel was colluding with the prosecution when defense counsel objected to the prosecution's line of questioning, and when defense counsel cross-examined a prosecution witness. This claim is entirely without merit. In objecting, defense counsel was not trying to "save the witness" from committing perjury, but was instead seeking to limit the prejudicial evidence and impeach a witness. These are both standard practice for defense counsel and are not malicious as suggested by Arneson.

amended (Jan. 19, 2017). Finally, the detective's testimony was not scientific or technical and did not require expert certification. ER 701, 702. Arneson also has not shown that any of these errors has likely affected the outcome of his trial.

## B.    Trial Court Error

Arneson raises several claims of trial court error, some of which we do not address for the reasons listed above.[3] First, Arneson argues the trial court erred in not granting his motion to suppress the evidence that Arneson was arrested in the house after the police entered for the purpose of a civil standby without his permission. When reviewing a denial of a motion to suppress evidence, the appellate court reviews whether substantial evidence supports the challenged findings of fact and, if so, whether the findings support the conclusions of law. State v. Brockob, 159 Wn.2d 311, 343, 150 P.3d 59 (2006), as amended (Jan. 26, 2007). "Unchallenged findings of fact are verities on appeal and an appellate court reviews only those facts to which the appellant has assigned error." Brockob, 159 Wn.2d at 343.

The trial court held a CR 3.6 hearing on the issue and issued findings of fact and conclusions of law. Arneson does not assign error to any of the trial court's findings of fact. Arneson simply argues that he was the resident on the lease, and he had a right to privacy in his home. Therefore, the police did not have the authority to enter the property, leading to his eventual arrest. The trial court found that Garcia was a co-resident of the house and that Arneson had an existing no-contact order barring him from the property. These findings supported the trial court's conclusions that Garcia

---

[3] Arneson argues the trial court erred in admitting cumulative photographic evidence of the victim's injuries. At trial, Arneson objected to several photographs as being cumulative. The trial court went through the photographs and determined they were not unduly prejudicial. Because the photographs in question are not in the record before us, we do not address this issue.

had the authority to allow the police to enter the home for the purpose of a civil standby. See State v. Morse, 156 Wn.2d 1, 11, 123 P.3d 832 (2005) ("When a guest is more than a casual visitor and has 'run of the house,' her lesser interest in the property is sufficient to render consent to search effective only as to the areas of the home 'where a visitor would normally be received'"). The evidence supported this conclusion.

Arneson also argues the trial court erred in holding the predicate no-contact order was valid. The trial court "as part of its gate-keeping function, should determine as a threshold matter whether the order alleged to be violated is applicable and will support the crime charged." State v. Miller, 156 Wn.2d 23, 31, 123 P.3d 827 (2005). "An order is not applicable to the charged crime if it is not issued by a competent court, is not statutorily sufficient, is vague or inadequate on its face, or otherwise will not support a conviction of violating the order. Miller, 156 Wn.2d at 31. At trial, Arneson argued that the failure of the trial court to check the "domestic violence" box on the no-contact order was error rendering the order ambiguous. The trial court found the errors were minor scrivener's errors, because the judgment accompanying the order stated the finding of domestic violence, therefore, failure to check the box did not render the order ambiguous as to whether the court found domestic violence. We agree with the trial court, and find no error.

C.    Prosecutorial Misconduct

Arneson raised several claims that the prosecutor committed misconduct. Arneson argues the prosecutor committed misconduct by vouching for the witnesses' credibility, and by making comments during closing statements that were "intended to inflame the passions of the jury." The defendant bears the burden of proving that the

-11-

prosecutor's alleged misconduct was both improper and prejudicial. State v. Emery, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). The "failure to object to an improper remark constitutes a waiver of error unless the remark is so flagrant and ill-intentioned that it causes an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury." State v. Russell, 125 Wn.2d 24, 86, 882 P.2d 747 (1994).

Arneson only pointed to statements in which the prosecutor was accurately relaying the evidence presented at trial, or was asking leading questions. Moreover, none of these statements were objected to at trial. Arneson did not point to any statements that would rise to the level of misconduct, let alone causing "enduring and resulting prejudice." Arneson did not meet his burden.

D.    Witness Credibility

Finally, throughout his statement, Arneson argues that several witnesses were not credible at trial. Credibility is an issue for the trier of fact, and we do not review credibility determinations on appeal. State v. Camarillo, 115 Wn.2d 60, 71, 794 P.2d 850 (1990). The jury had the opportunity to observe the witnesses and determine whether they were credible. We do not reweigh witness credibility.

We affirm.

_____ , ACJ

WE CONCUR:

_____          _____

-12-