185 P.3d 580 (2008)
STATE of Washington, Respondent,
v.
Jason Gregory EISFELDT, Petitioner.
No. 79947-4.
Supreme Court of Washington, En Banc.
Argued January 24, 2008.
Decided June 5, 2008.
*582 Clifford F. Cordes, Cordes Brandt PLLC, Olympia, WA, for Petitioner.
Thurston County Prosecutor's Office, David Harold Bruneau, Olympia, WA, for Respondent.
SANDERS, J.
¶ 1 On August 5, 2003, a repairman saw what he believed to be the remains of a marijuana growing operation in a Lacey house and called the police. When the police arrived the repairman let them into the house to show them what he had seen. The police then sought, and were granted, a telephonic warrant to search the rest of the house. In the course of the search and subsequent investigation, the police found an active marijuana growing operation in a second house. After a stipulated facts trial, Jason Eisfeldt was found guilty of two counts of manufacturing a controlled substance. The Court of Appeals affirmed. We granted review and reverse.

*583 FACTS AND PROCEDURAL HISTORY

¶ 2 In January 2003, James Wege leased a house in Lacey, Washington (the Lacey house), where Eisfeldt lived.[1] On August 5, 2003, Michael Piper, a repairman called by the owner, arrived at the Lacey house to repair a diesel spill in the living room. Eisfeldt left a key to the house under the mat for Piper. To ventilate the diesel fumes, Piper went into the attached garage to open the garage door. Piper noticed foam sealant surrounding the garage door, which he broke to open the garage door. After opening the door, Piper saw a garbage bag on the floor and looked inside. The bag contained a large amount of what he believed to be marijuana, silver reflective material, and wiring. Piper became suspicious and called the police.
¶ 3 Detectives Stahle and Elkins, of the Thurston County Narcotics Task Force (TNT), were sent to the Lacey house to meet Piper. When they arrived Piper brought the detectives inside the house and showed them the spill in the living room. Piper then led the detectives through the living room and into the attached garage. Once they were in the garage, the detectives saw the foam sealant around the garage door and the heavy duty wiring. The police looked inside the garbage bag and saw a bucket containing some dried marijuana "shake" and Mylar. At this point the detectives suspended their search and sought a warrant.
¶ 4 Detective Elkins obtained a telephonic search warrant for the Lacey house based largely on his observations during this search of the Lacey house. The TNT executed the search warrant and gathered evidence against Wege, Eisfeldt, and Ben Charles. Following this second search Elkins believed, based on his experience and training, the house had contained a marijuana grow operation. On August 27, 2003 based on the evidence seized in the Lacey house, Detective Elkins sought, and was granted, a search warrant for a second residence, this one in Olympia (the Olympia house). When the police served this warrant, they discovered an active marijuana growing operation. Eventually, Wege, Charles, and Eisfeldt admitted to growing marijuana in both the Lacey and Olympia houses.
¶ 5 Eisfeldt was charged with two counts of unlawful manufacture of a controlled substance with a school bus enhancement. Arguing the searches were unconstitutional, Eisfeldt sought to suppress the evidence collected during the searches of the Lacey and Olympia houses. The trial court denied Eisfeldt's motion. Following the denial of his suppression motion, Eisfeldt agreed to a stipulated facts trial. The trial court found Eisfeldt guilty of both counts.
¶ 6 Eisfeldt timely appealed the order denying his suppression motion to the Court of Appeals. He claimed the warrantless search of the Lacey house by the police violated the Fourth Amendment to the United States Constitution and article I, section 7 of the Washington State Constitution. He also claimed, even if the Lacey search was appropriate, the warrant issued for the Olympia house was not based on probable cause because there was an insufficient nexus to demonstrate a likelihood of illegal activity at the Olympia house. The Court of Appeals held no warrant was required for the initial police search because it did not go beyond the scope of the private search. The Court of Appeals further held the affidavit supporting the warrant for the Olympia house established a sufficient nexus to establish probable cause.[2] We granted review. State v. Eisfeldt, 162 Wash.2d 1005, 175 P.3d 1094 (2007).

STANDARD OF REVIEW
¶ 7 "Unchallenged findings of fact entered following a suppression hearing are verities on appeal." State v. Gaines, 154 *584 Wash.2d 711, 716, 116 P.3d 993 (2005). "We review a trial court's conclusions of law in an order pertaining to suppression of evidence de novo." State v. Carneh, 153 Wash.2d 274, 281, 103 P.3d 743 (2004).

ANALYSIS
¶ 8 Although they protect similar interests, "the protections guaranteed by article I, section 7 of the state constitution are qualitatively different from those provided by the Fourth Amendment to the United States Constitution." State v. McKinney, 148 Wash.2d 20, 26, 60 P.3d 46 (2002). The Fourth Amendment protects only against "unreasonable searches" by the State, leaving individuals subject to any manner of warrantless, but reasonable searches. U.S. Const. amend. IV ("The right of the people to be secure in their . . . houses . . . against unreasonable searches . . . shall not be violated. . . ."); Illinois v. Rodriguez, 497 U.S. 177, 187, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990) ("[W]hat is at issue . . . is not whether the right to be free of searches has been waived, but whether the right to be free of unreasonable searches has been violated.").
¶ 9 By contrast article I, section 7 is unconcerned with the reasonableness of the search, but instead requires a warrant before any search, reasonable or not. Const. art. I, § 7 ("No person shall be disturbed in his private affairs, or his home invaded, without authority of law."). This is because "[u]nlike in the Fourth Amendment, the word `reasonable' does not appear in any form in the text of article I, section 7 of the Washington Constitution." State v. Morse, 156 Wash.2d 1, 9, 123 P.3d 832 (2005). Understanding this significant difference between the Fourth Amendment and article I, section 7 is vital to properly analyze the legality of any search in Washington.
(1) The warrantless search of the Lacey house by the police was contrary to article I, section 7 of the Washington Constitution
¶ 10 Article I, section 7's blanket prohibition against warrantless searches is subject to a few well guarded exceptions. "Absent an exception to the warrant requirement, a warrantless search is impermissible under . . . article I, section 7 of the Washington Constitution." Gaines, 154 Wash.2d at 716, 116 P.3d 993 (citing State v. Johnson, 128 Wash.2d 431, 446-47, 909 P.2d 293 (1996)). This constitutional protection is at its apex "where invasion of a person's home is involved." City of Pasco v. Shaw, 161 Wash.2d 450, 459, 166 P.3d 1157 (2007), cert. denied, ___ U.S. ___, 128 S.Ct. 1651, ___ L.Ed.2d ___ (2008). Exceptions to the warrant requirement are narrowly drawn, and "[t]he State bears a heavy burden in showing that the search falls within one of the exceptions." State v. Jones, 146 Wash.2d 328, 335, 45 P.3d 1062 (2002). Here the State fails to carry this heavy burden to show an exception applies.[3]
¶ 11 The State argues because the search did not go beyond the scope of Piper's search, the police search was constitutional under the private search doctrine. See United States v. Jacobsen, 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984); State v. Dold, 44 Wash.App. 519, 722 P.2d 1353 (1986). However, the private search doctrine is inapplicable under the Washington Constitution.[4] The State also argues the detectives were given consent to search the Lacey house by *585 Piper or had a reasonable basis to believe they had consent. But Piper had no authority to consent, and article I, section 7 is unconcerned with the reasonable belief of the police officers.
(a) The private search doctrine is contrary to the Washington Constitution
¶ 12 Under the private search doctrine a warrantless search by a state actor does not offend the Fourth Amendment if the search does not expand the scope of the private search. The doctrine was first espoused in Walter v. United States, 447 U.S. 649, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980), and later applied in Jacobsen, 466 U.S. 109, 104 S.Ct. 1652, to sanction a warrantless search by state actors. Underlying this doctrine is the rationale that an individual's reasonable expectation of privacy is destroyed when the private actor conducts his search. Id. at 119, 104 S.Ct. 1652. Where the State does not violate an individual's reasonable expectation of privacy, the Fourth Amendment is not offended. Id.
¶ 13 Here article I, section 7 provides greater protection from state action than does the Fourth Amendment. State v. Simpson, 95 Wash.2d 170, 178, 622 P.2d 1199 (1980).[5] The analysis under article I, section 7 begins with a determination of whether the State has intruded into a person's private affairs.[6]State v. Boland, 115 Wash.2d 571, 577, 800 P.2d 1112 (1990). Unlike the Fourth Amendment and its reasonability determination, article I, section 7 protections are not "confined to the subjective privacy expectations of modern citizens." State v. Myrick, 102 Wash.2d 506, 511, 688 P.2d 151 (1984). Instead article I, section 7 protects "those privacy interests which citizens of this state have held, and should be entitled to hold, safe from governmental trespass absent a warrant." Id.
¶ 14 We have repeatedly held the privacy protected by article I, section 7 survived where the reasonable expectation of privacy under the Fourth Amendment was destroyed. For example in Boland, 115 Wash.2d at 578, 800 P.2d 1112, this court found a warrantless search of an individual's garbage violated article I, section 7, even though "it may be true an expectation that [others] will not sift through one's garbage is unreasonable. . . ." By contrast, the United States Supreme Court previously held individuals had no reasonable expectation of privacy in their garbage, and therefore there was no protection under the Fourth Amendment. California v. Greenwood, 486 U.S. 35, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988).
¶ 15 We held the same in State v. Gunwall, 106 Wash.2d 54, 720 P.2d 808 (1986). In Gunwall, 106 Wash.2d at 55, 720 P.2d 808, we considered whether the State could collect without a warrant phone numbers dialed by an individual. United States Supreme Court precedent holds an individual's reasonable expectation of privacy is destroyed when he dials a phone number because he "had to convey that number to the telephone company. . . ." Smith v. Maryland, 442 U.S. 735, 743-44, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979). But we held the individual privacy interest, no matter how unreasonably held, survives the conveyance of the phone number to the phone company and, as such, article I, section 7 prohibits collecting these numbers without a warrant. Gunwall, 106 Wash.2d at 69, 720 P.2d 808.
¶ 16 The individual's privacy interest protected by article I, section 7 survives the exposure that occurs when it is intruded upon by a private actor. Unlike the reasonable expectation of privacy protected by the Fourth Amendment, the individual's privacy interest is not extinguished simply because a private actor has actually intruded upon,[7] or is likely to intrude upon,[8] the interest. The *586 private search does not work to destroy the article I, section 7 interest, unlike the Fourth Amendment's, because the Fourth Amendment's rationale does not apply to our state constitutional protections.
¶ 17 We therefore reject the private search doctrine and adopt a bright line rule holding it inapplicable under article I, section 7 of the Washington Constitution.[9]
(b) The police did not receive consent to search the Lacey house
¶ 18 Piper lacked the actual authority to consent to the police search of the Lacey house. In Washington an individual has authority to consent to a search only where the individual had "free access to the shared area and authority to invite others into the shared area. That access must be significant enough that it can be concluded that the nonconsenting co-occupant assumed the risk that the consenting co-occupant would invite others into the shared area." Morse, 156 Wash.2d at 10-11, 123 P.3d 832.
¶ 19 Here, Piper lacked authority to consent to a search of the Lacey house. An individual does not assume the risk that a contractor "would invite others into the" house simply by requesting the contractor work within the house. Id. at 11, 123 P.3d 832. Since Piper had no authority to grant consent, his consent to the search does not validate the presumptively invalid warrantless search.
¶ 20 Furthermore the police officers' reasonable belief that Piper had authority to consent to the search is irrelevant. The State argues the officers' reasonable belief provides a good-faith exception to the warrant requirement. But unlike the Fourth Amendment,[10] article I, section 7 "focuses on the rights of the individual rather than on the reasonableness of the government action." Morse, 156 Wash.2d at 12, 123 P.3d 832. Rejecting an exception to the warrant requirement based on apparent authority to consent, we have indicated, "while under the Fourth Amendment the focus is on whether the police acted reasonably under the circumstances, under article I, section 7, we focus on expectations of the people being searched and the scope of the consenting party's authority." Id. at 10, 123 P.3d 832. The detectives' beliefs, no matter how reasonably held, cannot be used to validate a warrantless search under the Washington Constitution.
(2) The evidence found at the Lacey and Olympia houses was obtained unconstitutionally and must be suppressed
¶ 21 Since the warrantless search of the Lacey home was unconstitutional, all evidence gathered during that search must be suppressed. "The exclusionary rule mandates the suppression of evidence gathered through unconstitutional means." State v. Duncan, 146 Wash.2d 166, 176, 43 P.3d 513 (2002). "The exclusionary rule has traditionally barred from trial physical, tangible materials obtained either during or as a direct result of an unlawful invasion." Wong Sun v. United States, 371 U.S. 471, 485, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The evidence collected by the TNT detectives in their initial warrantless search must be suppressed under this rule.
¶ 22 In addition the evidence seized during the searches of the Lacey and Olympia houses made pursuant to search warrants must be suppressed. Where evidence *587 is obtained as a direct result of an unconstitutional search, that evidence must also be excluded as "`fruit of the poisonous tree.'" Id. at 487-88, 83 S.Ct. 407. "[I]f information contained in an affidavit of probable cause for a search warrant was obtained by an unconstitutional search, that information may not be used to support the warrant." State v. Ross, 141 Wash.2d 304, 311-12, 4 P.3d 130 (2000). The court must view the warrant without the illegally gathered information to determine if the remaining facts present probable cause to support the search warrant. Id. at 314-15, 4 P.3d 130. If the warrant, viewed in this light, fails for lack of probable cause, the evidence seized pursuant to that warrant must also be excluded. Id. at 315, 4 P.3d 130.
¶ 23 Here the majority of the evidence supporting the warrant for the Lacey house was obtained during the unconstitutional, warrantless search of the Lacey house. As the State conceded at argument, excluding the improperly gathered evidence renders the Lacey warrant invalid for lack of probable cause. This requires the exclusion of the evidence collected pursuant to the Lacey house search warrant as fruit of the poisonous tree.
¶ 24 In turn the evidence collected pursuant to the Olympia house search warrant must also be excluded as fruit of the poisonous tree. The search warrant was based largely on evidence seized at the Lacey house during both the warranted and warrantless searches. When this evidence is excised from the affidavit supporting the Olympia house search warrant, it is insufficient to support probable cause for its issuance. The evidence collected at the Olympia house must also be excluded as fruit of the poisonous tree.
¶ 25 We hold the private search doctrine is contrary to article I, section 7 and is inapplicable to warrantless searches in Washington. We also hold Piper lacked authority to consent to the search. As an unconstitutional search, the evidence secured by the detectives during the warrantless searches must be suppressed. Finally we hold the search warrants issued for both the Lacey and Olympia houses were invalid and, accordingly, suppress all evidence seized pursuant to those warrants. We reverse Jason Eisfeldt's conviction and remand the case for further proceedings consistent with this opinion.
ALEXANDER, C.J., CHAMBERS, OWENS, FAIRHURST, J. JOHNSON, and STEPHENS, JJ., concur.
MADSEN, J. (concurring in result).
¶ 26 Although I agree with the result, I disagree with the majority's rejection of the "private search" doctrine. Indeed, evidence from private searches commonly form the evidence used to prosecute criminal conduct in this state. To reject the doctrine in all cases, as the majority does, is unwarranted by our case law and by common sense. I respectfully dissent.
¶ 27 The private search doctrine provides that where a private actor conducts a search, the State may conduct a warrantless search if the State does not expand the scope of the private search. Walter v. United States, 447 U.S. 649, 100 S.Ct. 2395, 65 L.Ed.2d 410 (1980). First espoused in Walter, the doctrine was later applied in United States v. Jacobsen, 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984), to uphold a warrantless search. Underlying this doctrine is the premise that an individual's expectation of privacy is destroyed when the private actor conducts his search. Id. at 119, 104 S.Ct. 1652. When the individual no longer has an expectation of privacy, the State does not conduct a "search" within the meaning of the Fourth Amendment to the United States Constitution. Id.
¶ 28 In Jacobsen, the Supreme Court held a search of a package by the police did not violate the Fourth Amendment so long as it did not exceed the scope of a prior private search. Id. at 120, 104 S.Ct. 1652. There the defendant mailed cocaine concealed by eight layers of wrappings via Federal Express. Id. at 111, 104 S.Ct. 1652. Federal Express opened the package in accordance with its procedures, discovered the package contained cocaine, and notified the DEA (Drug Enforcement Administration). Id. Federal Express placed the cocaine back in the box, just as it had found it, and the DEA *588 pulled the cocaine out of the box without obtaining a warrant. Id. The Supreme Court held this search did not violate the Fourth Amendment because "[defendants] could have no privacy interest in the contents of the package, since it remained unsealed and since the Federal Express employees had just examined the package and had, of their own accord, invited the federal agent to their offices for the express purpose of viewing its contents." Id. at 119, 104 S.Ct. 1652 (emphasis added).
¶ 29 In State v. Dold, 44 Wash.App. 519, 722 P.2d 1353 (1986), the Court of Appeals, relying on Jacobsen, held a police search of a private letter was not unconstitutional where the letter had been previously opened by a nonstate actor. Id. at 522, 722 P.2d 1353. The police received a previously opened piece of mail, addressed to the defendant, in an envelope with no return address. Id. at 521-22, 722 P.2d 1353. The letter indicated Dold was trafficking in marijuana and LSD (lysergic acid diethylamide). Id. Dold was subsequently investigated and charged with violation of the Uniform Controlled Substances Act, chapter 69.50 RCW. Id. at 522, 722 P.2d 1353.
¶ 30 Contrary to the majority's assertion, the differences between article I, section 7 of the Washington State Constitution and the Fourth Amendment do not justify rejection of the "private search" doctrine under all circumstances. The determination of what constitutes private affairs under article I, section 7 "focuses on those privacy interests which citizens of this state have held, and should be entitled to hold, safe from governmental trespass absent a warrant." State v. Myrick, 102 Wash.2d 506, 511, 688 P.2d 151 (1984). It can hardly be said that our citizens have, or are entitled to have, an expectation that they retain a privacy interest in evidence of a crime obtained by a private actor and delivered to the police.[1] Indeed, the "silver platter"[2] doctrine, accepted by this court as being an exception to the warrant requirement of article I, section 7, provides for the use of evidence obtained in violation of this state's warrant requirement even though under that doctrine it is law enforcement officers from a foreign jurisdiction who have obtained the evidence. In re Pers. Restraint of Teddington, 116 Wash.2d 761, 772, 808 P.2d 156 (1991) (rejecting article I, section 7 challenge to evidence obtained by federal officers pursuant to federal constitutional standards; holding evidence admissible notwithstanding the dictates of our state constitution); State v. Bradley, 105 Wash.2d 898, 719 P.2d 546 (1986) (article I, section 7 does not require exclusion of evidence seized by federal officials when the seizure comported with the federal constitution even if the evidence was obtained in violation of the state constitution). Given that the silver platter doctrine applies under article I, section 7, it follows that the private search doctrine must similarly apply under the state constitution.
¶ 31 I concur in the result reached by the majority, though, because the evidence here was not delivered to the police. As pointed out by Justice Charles Johnson, it is the delivery of evidence to the police by the private actor that is of determinative importance to the application of the private search doctrine.
When a private party acting independently of the government conducts a search and delivers the material to the police, neither the Fourth Amendment, nor Article I, Section 7 require the police to obtain a search warrant before examining the material if the government search does not exceed the scope of that previously conducted by the private party.
Charles W. Johnson, Survey of Washington Search and Seizure Law: 2005 Update, 28 *589 SEATTLE U.L.REV. 467, 711 (2005) (emphasis added).
¶ 32 Each of the cases applying this principle includes the element of possession and delivery of the searched property. E.g., Jacobsen, 466 U.S. 109, 104 S.Ct. 1652; Walter, 447 U.S. 649, 100 S.Ct. 2395 (holding no constitutional search occurred when a series of boxes were delivered to the wrong party, opened by that party, and the contents searched prior to turning the boxes over to the police); Dold, 44 Wash.App. 519, 722 P.2d 1353; State v. Bishop, 43 Wash.App. 17, 714 P.2d 1199 (1986) (a security guard found and seized packages of heroin in the defendant's hospital room, no illegal search occurred when the police reopened the packages and tested the material).
¶ 33 But in the case of a residential search, the private actor cannot deliver the house to the police. This is true here. Michael Piper did not deliver the house to the police and neither Piper nor the detectives ever had possession of the house.[3] Therefore, the private search doctrine espoused in Jacobsen and Dold is inapplicable here.
¶ 34 In addition, the private search doctrine does not apply when an individual allows another to enter his or her home. Unlike the situation when a private individual opens a letter or a misdelivered package, or a company opens a box in its possession pursuant to company policy, the individual retains his or her privacy interest in the home when allowing another person to enter the home.
¶ 35 Unlike the majority, I would not reject the private search doctrine but would hold instead that the doctrine does not apply to a search of an individual's home because the legitimate expectation of privacy in an individual's home is not destroyed simply because another person has entered the interior of the home.
C. JOHNSON, J., concurs.
NOTES
[1] Eisfeldt was originally charged with manufacturing a controlled substance alongside two codefendants, Ben Charles and James Wege. Eisfeldt's case was severed from his codefendants' cases prior to his stipulated facts trial, and only his conviction is at issue here.
[2] Because we hold the Olympia search unconstitutional as "fruit of the poisonous tree," we do not consider whether there was a nexus between the facts alleged and the Olympia house sufficient to establish probable cause. See State v. Peterson, 133 Wash.2d 885, 894, 948 P.2d 381 (1997) (Talmadge, J., concurring).
[3] Eisfeldt does not claim Piper's search of the Lacey house was unconstitutional. Article I, section 7 and Fourth Amendment protections apply only to searches by state actors, not to searches by private individuals. See Burdeau v. McDowell, 256 U.S. 465, 475, 41 S.Ct. 574, 65 L.Ed. 1048 (1921); State v. Carter, 151 Wash.2d 118, 124, 85 P.3d 887 (2004). Piper had no relationship with any police officer and was not encouraged by the State to search the house. Since Piper was a private actor when he searched the house, Eisfeldt's constitutional protections are not implicated.
[4] The Court of Appeals has applied the doctrine but never considered its constitutionality under the state constitution. See Dold, 44 Wash.App. 519, 722 P.2d 1353; State v. Bishop, 43 Wash. App. 17, 714 P.2d 1199 (1986). The Court of Appeals in Dold indicated it had previously approved the private search doctrine under article I, section 7 in State v. Ludvik, 40 Wash.App. 257, 698 P.2d 1064 (1985). However, the court in Ludvik considered only the admissibility of evidence collected by a private actor in the course of a private search. Id. at 263, 698 P.2d 1064.
[5] No analysis is necessary under State v. Gunwall, 106 Wash.2d 54, 720 P.2d 808 (1986), where the court applies "established principles of state constitutional jurisprudence." State v. White, 135 Wash.2d 761, 769, 958 P.2d 982 (1998).
[6] Article I, section 7 also requires the intrusion to be made "with authority of law." However, the private search doctrine does not provide authority for a search, but instead holds no state search occurred.
[7] Gunwall, 106 Wash.2d at 69, 720 P.2d 808.
[8] Boland, 115 Wash.2d at 578, 800 P.2d 1112.
[9] The concurrence suggests citizens do not "retain a privacy interest in evidence of a crime obtained by a private actor and delivered to the police." Concurrence at ___. This is correct where the evidence obtained during a private search is given to the State; constitutional protections do not apply to private actors. See State v. Walter, 66 Wash.App. 862, 833 P.2d 440 (1992). But here the evidence obtained during the private search consisted entirely of Piper's observations. The private search is not at issue here, but instead whether the private search doctrine allows the State to conduct a subsequent warrantless search. As such, the concurrence's analysis is misplaced insofar as it compares evidence obtained by a private actor to evidence obtained by the State.
[10] The Fourth Amendment, unlike article I, section 7, allows good-faith exceptions to the warrant requirement. Morse, 156 Wash.2d at 9, 123 P.3d 832 ("The Fourth Amendment does not prohibit `reasonable' warrantless searches and seizures. The analysis under the Fourth Amendment focuses on whether the police have acted reasonably under the circumstances.").
[1] The majority relies on State v. Boland, 115 Wash.2d 571, 800 P.2d 1112 (1990), to support its assertion that the private search doctrine does not apply under the state constitution. However, Boland involved a police search, not a private search and, therefore, is inapposite. The other case relied upon by the majority is State v. Gunwall, 106 Wash.2d 54, 720 P.2d 808 (1986). Gunwall is also inapplicable for the same reason; the police requested the phone records in that case.
[2] The doctrine has changed significantly since it was coined in Lustig v. United States, 338 U.S. 74, 78-79, 69 S.Ct. 1372, 93 L.Ed. 1819 (1949). See State v. Fowler, 157 Wash.2d 387, 396, 139 P.3d 342 (2006) (discussing development of the doctrine).
[3] A different question would be presented if Piper had removed the garbage bag of contraband and presented it, outside of the home, to the police. Although this may fit within the private search doctrine, the question is not presented here.