
## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 69895-8 |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| SAMUEL ELMER FAIRBANKS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: April 29, 2013 |

BECKER, J. — A warrantless search of a home is not unconstitutional after the occupant is informed of his rights and gives officers a voluntary consent to the search. After an officer of the Kitsap County Sheriff's Department read Appellant Samuel Fairbanks his Ferrier[1] rights, Fairbanks consented to a search. We find no error in the court's denial of Fairbanks' motion to suppress evidence of methamphetamine officers found during the search. We affirm.

According to the court's unchallenged findings of fact entered following a suppression hearing, in October 2010 Sergeant Jon VanGesen of the Kitsap County Sheriff's Office opened a file documenting an anonymous complaint of a marijuana odor emanating from a residence in Port Orchard, Washington. The complainant specifically named Fairbanks and his wife as the occupants of the residence. Sergeant VanGesen was aware that Fairbanks had previously been

_____

[1] State v. Ferrier, 136 Wn.2d 103, 960 P.2d 927 (1998).

investigated for methamphetamine possession, had been found growing marijuana at the residence, and had been convicted for possession of a controlled substance. Officers had searched the home in 2004 and 2008 pursuant to warrants.

On this occasion, possessing only a generalized, anonymous report of a marijuana odor, Sergeant VanGesen did not obtain a warrant. He went to the home to conduct a "knock-and-talk" and ask for Fairbanks' voluntary consent to a search. He drove to the residence in an unmarked patrol car. He and a second officer, both in plain clothes, walked up to the door of the home. Two or three other officers waited in the driveway beside marked patrol cars.

Fairbanks was at home. He met the officers at the door. When officers informed him of the complaint and asked him if he was willing to give his consent to a search, Fairbanks responded, "Yes." Sergeant VanGesen read Fairbanks the standard Ferrier warnings—that he could refuse to consent to the search, that he could withdraw or revoke his consent at any time, that he could limit the scope of his consent to certain areas of the premises, and that evidence found during the search may be used in court against him or any other person.

Fairbanks led Sergeant VanGesen and another officer to the detached garage, where they found nothing, and then accompanied them back into the home. Before entering the house, Fairbanks produced a marijuana pipe and a bag of marijuana from his pocket. Inside a dresser in the master bedroom, officers found a balance scale bearing a white, powdery residue. In a second

2

bedroom, officers found a second scale and urinalysis drug-testing kits for methamphetamine and cocaine. During the search, Fairbanks went to the bathroom and flushed the toilet. Sergeant VanGesen believed that Fairbanks had flushed the toilet in order to dispose of drugs.

Fairbanks was detained. The residue on the scales ultimately tested positive for methamphetamine. Officers charged him with one count of Possession of a Controlled Substance (Methamphetamine).

Before trial, Fairbanks moved to suppress the State's evidence of methamphetamine. He argued the warrantless search of his home that had revealed the methamphetamine violated his constitutional right to privacy guaranteed by article 1 section 7 of the Washington Constitution and the Fourth Amendment to the United States Constitution.

The court held a suppression hearing pursuant to Criminal Rule 3.6. Fairbanks and the two officers who led the search testified. The court denied Fairbanks' motion and permitted the State to introduce the evidence of the drug residue at trial.

A bench trial was held on stipulated facts. The facts included a stipulation that both of the scales found in Fairbanks' house tested positive for methamphetamine residue. Fairbanks was convicted as charged. He now appeals.

## ANALYSIS

Fairbanks contends his conviction should be reversed, and the evidence

of methamphetamine suppressed, because the warrantless search of his home was unconstitutional.

The Washington Constitution guarantees the right of every person to be free from invasions of the home "without authority of law." WASH. CONST. art. I, § 7. This provision provides greater privacy protections than its federal counterpart in the Fourth Amendment, which prohibits only "unreasonable" searches. State v. Eisfeldt, 163 Wn.2d 628, 634, 185 P.3d 580 (2008). "Authority of law" requires that officers possess a valid search warrant unless one of "'a few jealously guarded exceptions'" applies. In re Pers. Restraint of Nichols, 171 Wn.2d 370, 379, 256 P.3d 1131 (2011), quoting York v. Wahkiakum Sch. Dist. No. 200, 163 Wn.2d 297, 306, 178 P.3d 995 (2008). Well-settled exceptions to the warrant requirement include exigent circumstances, searches incident to an arrest, inventory searches, plain view doctrine, Terry stops,[2] and consent. Nichols, 171 Wn.2d at 379. At issue in this appeal is the consent exception. The State bears the burden of proving the exception applies. State v. Schultz, 170 Wn.2d 746, 754, 248 P.3d 484 (2011).

To satisfy the consent exception, the State must prove three elements: (1) the consent was voluntary, (2) the person granting consent had authority to do so, and (3) the search did not exceed the scope of the consent. State v. Reichenbach, 153 Wn.2d 126, 131, 101 P.3d 80 (2004). In determining voluntariness, the court looks at the totality of the circumstances. State v.

---

[2] Terry v. Ohio, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

4

Bustamante-Davila, 138 Wn.2d 964, 981-82, 983 P.2d 590 (1999). The factors the court considers include the degree of education and intelligence of the consenting individual, whether or not the individual was advised of his right to refuse consent, and the experience of the individual in the criminal justice system. Bustamante-Davila, 138 Wn.2d at 981-82. Where officers conduct a "knock and talk," for a consent to be voluntary the officers must specifically inform the individual "that he or she may lawfully refuse to consent to the search and that they can revoke, at any time, the consent that they give, and can limit the scope of the consent to certain areas of the home." State v. Ferrier, 136 Wn.2d 103, 118, 960 P.2d 927 (1998).

Following the suppression hearing, the court entered findings of fact and conclusions of law, ultimately concluding that the search was proper. The court's unchallenged findings include the following: (1) that Sergeant VanGesen "asked the Defendant if he was willing to give his consent to a search, to which the Defendant responded 'Yes,'" (2) that Sergeant VanGesen read aloud to Fairbanks his Ferrier rights, (3) that after reading these rights, Sergeant VanGesen asked Fairbanks foundational questions to ascertain his ability to understand the warnings, (4) that Fairbanks then "led" the officers to the garage, (5) that Fairbanks voluntarily produced marijuana and a pipe from his pocket, (6) that Fairbanks "accompanied" the officers into the residence, (7) that Fairbanks "did not place limitations on the search," and (8) that Fairbanks "was cooperative at all times, other than his presumably flushing drugs down the toilet."

We treat these unchallenged findings of fact as verities on appeal. State v. Hill, 123 Wn.2d 641, 647, 870 P.2d 313 (1994). We review conclusions of law de novo. Schultz, 170 Wn.2d at 754. Viewed in their totality, the unchallenged facts establish that the consent Fairbanks gave was voluntary. He was read the required Ferrier warnings, he unequivocally said "Yes" when asked for his consent to a search, and he actively led and accompanied officers to both his garage and residence. He is a person not unfamiliar with the criminal justice system.

Fairbanks contends he told the officers to stop the search. At the hearing, Fairbanks insisted that after showing officers that he no longer had a marijuana grow operation in the garage, he told the officers to stop searching. Fairbanks assigns error to the court's findings that all he did was to ask the officers, "'So I can tell you to stop searching at any time?', or words to that effect," that Sergeant VanGesen responded, "'Yes, you can, as I explained earlier,'" and that Fairbanks then made "no further conversation or protestation."

We review a trial court's challenged findings of fact in a suppression hearing for substantial evidence. Hill, 123 Wn.2d at 647. Substantial evidence exists where there is a sufficient quantity of evidence in the record to persuade a fair-minded, rational person of the truth of the finding. Hill, 123 Wn.2d at 644.

The court's findings find substantial support in the testimony of Sergeant VanGesen and the testimony of a second officer in the room who witnessed the interaction. The court's findings rest on its judgments of credibility and the

demeanor of witnesses—well-settled functions of the trier of fact. See Hill, 123 Wn.2d at 646. Furthermore, Fairbanks does not challenge the court's finding that what Sergeant VanGesen subjectively heard Fairbanks pose was a "question . . . a clarification of the earlier rights advisement," and not "an equivocation or an instruction to the officers to stop the search." We treat this finding as a verity on appeal.

Fairbanks contends his consent was involuntary because, as the court found, he possessed a subjective belief that the officers would search his home regardless of whether he gave his consent. The court found: "based upon two prior searches of his residence pursuant to search warrants in 2004 and 2008, the Defendant subjectively believed that officers would search his residence regardless of whether he voiced his consent."

Fairbanks' subjective belief does not render his consent involuntary. Officers here made no claim to possess a warrant, and they informed Fairbanks that his consent was needed before a search could occur. These undisputed facts make this case distinct from the case Fairbanks relies on, Bumper v. North Carolina, 391 U.S. 543, 88 S. Ct. 1788, 20 L. Ed. 2d 797 (1968). In Bumper, officers obtained entry to a house by claiming they had a search warrant. Where officers make no claim to possess lawful authority to search, the occupant's subjective distrust of law enforcement is not enough to render the occupant's spoken words of consent involuntary. See State v. Reichenbach, 153 Wn.2d 126, 132, 101 P.3d 80 (2004) (in determining voluntariness of consent court will

consider "any express or implied claims of police authority to search, previous illegal actions of the police, the defendant's cooperation, and police deception as to identity or purpose").

Fairbanks contends his consent was involuntary because he was coerced into consenting by the officers' "significant show of force." A finding of consent may be invalidated if the circumstances are so coercive as to negate the voluntariness of the consent. State v. Werth, 18 Wn. App. 530, 534-35, 571 P.2d 941 (1977), review denied, 90 Wn.2d 1010 (1978). The record presents no evidence of force so significant as to constitute coercion. In Werth, the court found coercion where officers ordered the defendant out of her home, away from the door, and ordered her to keep her hands in plain view, one officer was "armed with a shotgun," she was not informed of her right to refuse consent, and two days earlier her home had been searched illegally without her consent. Werth, 18 Wn. App. at 535.

By comparison, the present record portrays only a mild display of police force. The two officers who approached the door were dressed in plain clothes. Although they both wore badges and their guns were visible, Fairbanks testified that as he saw Sergeant VanGesen approaching his house, he saw him as "just an individual walking down my driveway towards my back door in plain clothes with a clipboard in his hands. I was thinking this was an animal control officer." Although other officers were also present, they waited in the driveway beside their vehicles. Although Sergeant VanGesen asked Fairbanks to secure his

barking dog before they began speaking, it was not until well into the search, after the garage had been searched, the first scale had been discovered, and Fairbanks had flushed something down the toilet, that officers ever constrained his movement by instructing him to go into the living room and sit down. There was no coercion sufficient to invalidate the voluntariness of Fairbanks' consent.

Fairbanks contends the search was invalid because it exceeded an implied limitation on the scope of his consent. A consensual search may go no further than the limits for which the consent was given. Reichenbach, 153 Wn.2d at 133. Any express or implied limitations or qualifications may reduce the scope of consent in duration, area, or intensity. Reichenbach, 153 Wn.2d at 133. By informing Fairbanks they were there to investigate a complaint of an "odor of marijuana," Fairbanks argues officers limited the scope of the search to a general survey of rooms, not what he refers to as "a full-blown search of the smallest areas of his home, including areas which could not accommodate a grow operation." It was the more detailed search, which included looking into bedroom cabinets, that revealed the methamphetamine.

There was no implied limitation on the scope of the search. We treat as a verity the court's unchallenged findings that Fairbanks "did not place limitations on the search," that he "led" officers to the garage and "accompanied" them into the house, that he was "cooperative" with the search, and that in a previous search officers found processed marijuana in the master bedroom. The record reflects that Fairbanks stood by unrestrained while officers opened drawers in the

9

master bedroom and discovered the first balance scale, and that when officers asked for a key to open a small locked safe, Fairbanks got the key and opened it for them. In other words, Fairbanks acquiesced to having even the smallest, locked areas of his home searched by officers. The search did not exceed the implied scope of consent.

Affirmed.

WE CONCUR:

Becker, J.

Leach, C. J.

Cox, J.