IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 33698-1-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| TIMOTHY H. LEONARD, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, A.C.J. — Timothy Leonard appeals his conviction for

possession of a controlled substance. He argues defense counsel provided ineffective

assistance in an unsuccessful suppression motion by failing to cite two cases—one

discussing small container searches and the other discussing the private search doctrine.

He also argues the State's early case resolution (ECR) plea bargaining practices violated

his right to effective assistance. We disagree with Mr. Leonard's arguments and affirm.

FACTS

On August 26, 2014, Mr. Leonard was in a Rosauers grocery store and a store

manager saw him conceal two drinks in his pants pockets. As Mr. Leonard exited the

store, a loss prevention officer, Jack Hastings, stopped him. Mr. Hastings told Mr. Leonard he wanted the drinks that were concealed in Mr. Leonard's pockets. Mr. Leonard complied. Mr. Leonard said, "'I'm sorry my girl and I are really thirsty.'" Clerk's Papers (CP) at 110.

Mr. Hastings then handcuffed Mr. Leonard and took him to the manager's office downstairs. A Rosauers employee brought Mr. Hastings a receipt showing that the two drinks cost $1.68. Mr. Hastings decided he would not cite Mr. Leonard for theft, but instead would issue him a notice prohibiting him from entering the store. Mr. Hastings gave Mr. Leonard the notice and said he would let him go as long as he did not have any outstanding warrants.

Mr. Hastings called Crime Check, a crime reporting service, to determine if Mr. Leonard had any outstanding warrants. The Crime Check dispatcher told Mr. Hastings that Mr. Leonard had an outstanding warrant and that an officer would be sent to get him. Mr. Hastings decided to detain Mr. Leonard until the officer arrived. Once Mr. Hastings told Mr. Leonard that an officer was on the way to arrest him, Mr. Leonard "'got really nervous'" and asked to use the restroom. CP at 114.

2

After this point the facts are vague.[1] Mr. Hastings said he would allow Mr. Leonard to use the restroom, but only if he could first search him. Mr. Hastings searched Mr. Leonard and found a Jack Link's jerky container (similar to a chewing tobacco container) in his back left pocket. Mr. Hastings looked inside the container and saw two small plastic bags and a small piece of aluminum foil. Mr. Leonard admitted the bags contained heroin.

When the officer arrived, she advised Mr. Leonard he was under arrest for his warrant. She then searched Mr. Leonard and his belongings incident to arrest. The officer looked inside the Jack Link's jerky container and found a small zip top baggie containing a brown tar-like substance that field tested positive for heroin. Later, a

---

[1] The parties called only one witness at the CrR 3.6 hearing, Mr. Hastings. Defense counsel was satisfied with establishing through Mr. Hastings that Mr. Leonard was handcuffed through the time Mr. Hastings decided not to arrest him. The State was satisfied with establishing through Mr. Hastings that he was not a commissioned law enforcement officer. Other than that, the parties stipulated to the admission of various witness summaries disclosed by the State in discovery. Unfortunately, the various summaries are inconsistent on various details.

The trial court entered two sets of findings of fact. One set related to the motion to suppress. The other set related to the stipulated facts bench trial. These findings of fact are sometimes vague and internally inconsistent.

On appeal, Mr. Leonard argues this court should construe all inconsistencies in his favor because the State has the burden of proof. The State does not respond to this argument. We accept Mr. Leonard's description of events.

forensic scientist at the Washington State Patrol Crime Laboratory tested the substance and determined it was heroin.

## PROCEDURE

The State charged Mr. Leonard with possession of a controlled substance. The State sent the case to its ECR unit. The ECR unit extended a plea offer that gave Mr. Leonard the option of either pleading guilty to misdemeanor solicitation to commit possession of a controlled substance or entering the friendship diversion program. The plea offer contained the following language:

> The assigned [deputy prosecuting attorney] may withdraw this offer at their discretion. If this case is transferred off ECR, this offer is deemed to be rejected and is withdrawn. . . .
> \*\*THIS OFFER EXPIRES FOUR (4) WEEKS AFTER ARRAIGNMENT.

CP at 30. The ECR offer expired on October 28, 2014.

While in the ECR unit, Mr. Leonard's case was continued four times.[2] On November 12, 2014, defense counsel's investigator asked the ECR unit prosecutor to help him facilitate an interview with Mr. Hastings. The ECR unit prosecutor told defense counsel that Mr. Leonard's case no longer met the criteria for early resolution, and then transferred the case out of the ECR unit for traditional prosecution.

---

[2] The trial court did not make any specific findings as to why the case kept getting

4

On December 2, the new prosecutor asked defense counsel if Mr. Leonard had rejected the diversion offer. Defense counsel told the new prosecutor that Mr. Leonard had not rejected any offer, but said he still wanted to interview Mr. Hastings. On December 4, the new prosecutor then arranged for defense counsel to interview Mr. Hastings and advised defense counsel that the State was withdrawing all offers that Mr. Leonard had not already accepted. Defense counsel then interviewed Mr. Hastings and two dispatchers.

Mr. Leonard moved to suppress the heroin under CrR 3.6. In his motion, Mr. Leonard acknowledged the exclusionary rule only applies to state action and that store security officers are private individuals. However, Mr. Leonard argued that state action was present because the Crime Check dispatcher told Mr. Hastings to detain him until the police officer arrived. The trial court found that Crime Check did not tell Mr. Hastings to hold Mr. Leonard until an officer arrived, but that Mr. Hastings elected to detain Mr. Leonard. The trial court concluded that Mr. Hastings did not act as an agent for law enforcement and, therefore, there was no state action. The trial court denied Mr. Leonard's motion to suppress.

---

continued, but the record indicates that Mr. Leonard asked for the continuances.

5

Mr. Leonard also moved pursuant to CrR 8.3(b) to dismiss the charge against him due to arbitrary action or governmental misconduct. Mr. Leonard argued that he was denied due process and effective assistance of counsel because defense counsel was unable to interview Mr. Hastings before the State withdrew its plea offer. The trial court concluded that the State's policy of withdrawing its plea offer after a specific period of time did not constitute governmental misconduct, nor did it affect Mr. Leonard's right to a fair trial or right to counsel. The trial court also concluded that Mr. Leonard did not detrimentally rely on the ECR unit's offer. The trial court denied Mr. Leonard's motion to dismiss.

The trial court held a bench trial on stipulated facts. The trial court found Mr. Leonard guilty of possession of a controlled substance. Mr. Leonard appeals.

## ANALYSIS

Mr. Leonard argues that defense counsel provided ineffective assistance. The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). A defendant receives ineffective assistance if the attorney's conduct (1) falls below a minimum objective standard of reasonable attorney conduct, and (2) prejudiced the defendant, i.e., there is a reasonable probability

6

the attorney's conduct affected the case's outcome. *State v. Benn*, 120 Wn.2d 631, 663, 845 P.2d 289 (1993). Because ineffective assistance of counsel is an issue of constitutional magnitude, it may be considered for the first time on appeal. *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009).

"There is a strong presumption that counsel has rendered adequate assistance and has made all significant decisions in the exercise of reasonable professional judgment." *Benn*, 120 Wn.2d at 665. Counsel does not perform deficiently when he or she declines to raise a nonmeritorious argument, given the argument's likelihood of failure. *See State v. Williams*, 152 Wn. App. 937, 944-45, 219 P.3d 978 (2009), *rev'd on other grounds*, 171 Wn.2d 474, 251 P.3d 877 (2011). This court reviews ineffective assistance claims de novo. *State v. Sutherby*, 165 Wn.2d 870, 883, 204 P.3d 916 (2009).

A.    INEFFECTIVE ASSISTANCE FOR NOT CITING TWO CASES

Mr. Leonard first argues that defense counsel provided ineffective assistance because defense counsel failed to cite two cases that would have resulted in the trial court suppressing the evidence: *State v. Russell*, 180 Wn.2d 860, 330 P.3d 151 (2014) and *State v. Eisfeldt*, 163 Wn.2d 628, 185 P.3d 580 (2008).

7

1.      Russell *and small container searches*

The protections of the Fourth Amendment to the United States Constitution and

article I, section 7 of the Washington Constitution only apply to searches by state actors,

not to searches by private individuals. *Eisfeldt*, 163 Wn.2d at 635 n.3. Thus, for the

exclusionary rule to apply, it must be a governmental agent who conducts the illegal

search. *State v. Wolken*, 103 Wn.2d 823, 830, 700 P.2d 319 (1985). To demonstrate that

a private individual is acting as a governmental agent, "[i]t must be shown that the State

in some way 'instigated, encouraged, counseled, directed, or controlled' the conduct of

the private person." *Id.* (quoting *State v. Mannhalt*, 33 Wn. App. 696, 702, 658 P.2d 15

(1983)). When acting in their capacity as private security officers, store security officers

are considered private individuals and not state actors. *State v. Gonzales*, 24 Wn. App.

437, 440-41, 604 P.2d 168 (1979).

In *Russell*, a police officer stopped Tanner Russell for violating traffic laws.

*Russell*, 180 Wn.2d at 864. The officer believed Mr. Russell might have a gun based on a

previous encounter with him, so the officer frisked Mr. Russell. *Id.* at 864-65. The

officer felt a small container, removed it, and then opened it without a warrant. *Id.* at

870. The officer knew that the contents of the container weighed only a fraction of what

a pistol weighed. *Id.* The *Russell* court held that the officer's search was unconstitutional

8

because he did not have a reasonable belief that the container housed a gun and, therefore, he had no authority to search through it. *Id.*

*Russell* is inapplicable to this case. *Russell* does not apply to Mr. Hastings's search of Mr. Leonard's jerky container because there was no state action. In *Russell*, a police officer searched Mr. Russell's container, whereas here Mr. Hastings acted in his capacity as a private loss prevention officer.

*Russell* also does not apply to the arresting officer's subsequent search of Mr. Leonard's jerky container. In *Russell*, the police officer conducted a *Terry*[3] stop and, therefore, the officer was limited to ascertaining whether Mr. Russell had a weapon. Here, the officer searched Mr. Leonard incident to arrest after she arrested him on an outstanding warrant and, therefore, she was allowed to search unlocked objects within his control to prevent him from destroying evidence. *See, e.g., State v. Jordan*, 92 Wn. App. 25, 29-31, 960 P.2d 949 (1998) (warrantless searches permissible where police arrested Mr. Jordan on outstanding warrants, searched him incident to arrest, and found a film canister and a prescription pill bottle in his pockets, which contained methamphetamine);

---

[3] *Terry v. Ohio*, 392 U.S. 1, 27, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968) (permitting a police officer to conduct a limited pat-down search of a person's clothing when an officer has an objectively reasonable belief that the person is armed and presently dangerous, regardless of whether the officer has probable cause to arrest the suspect for a crime).

*State v. VanNess*, 186 Wn. App. 148, 161-62, 344 P.3d 713 (2015) (justification for a search incident to lawful arrest does not apply to *locked* containers in arrestee's backpack).

For these reasons, *Russell* would not have helped Mr. Leonard's CrR 3.6 motion. We conclude defense counsel did not perform deficiently by not citing it.

2.      Eisfeldt *and the private search doctrine*

The private search doctrine provides that where a private actor conducts a search, the State may conduct a warrantless search if the State does not expand the scope of the private search. *Walter v. United States*, 447 U.S. 649, 657-58, 100 S. Ct. 2395, 65 L. Ed. 2d 410 (1980). The rationale underlying this doctrine is that a private search extinguishes an individual's reasonable expectation of privacy in the object and, once this has occurred, the Fourth Amendment does not prohibit governmental use of this nonprivate information. *United States v. Jacobsen*, 466 U.S. 109, 117, 104 S. Ct. 1652, 80 L. Ed. 2d 85 (1984).

In *Eisfeldt*, the owners of a house called a repairman to fix a spill in the living room. *Eisfeldt*, 163 Wn.2d at 632. The repairman went into the house's attached garage, saw a garbage bag on the floor that contained marijuana shake, and called the police. *Id.* Once the police arrived, the repairman led them into the garage and showed them the

10

garbage bag. *Id.* at 632-33. The police then suspended their search and got a warrant based on what they saw inside the house. *Id.* at 633. The police searched the house pursuant to the warrant, and the search produced evidence that led them to a marijuana grow operation. *Id.*

The *Eisfeldt* court held the private search doctrine is contrary to article I, section 7 and therefore the police's search violated the Washington Constitution. *Id.* at 635-36. The court reasoned that article I, section 7 provides greater protection for an individual's privacy interests than the Fourth Amendment. *Id.* at 636. And unlike the "reasonable" expectation of privacy protected by the Fourth Amendment, an individual's privacy interest under article I, section 7 is not extinguished simply because a private actor intrudes on that interest first. *Id.* at 638.

Mr. Leonard argues the trial court would have suppressed the heroin if it had known that the private search doctrine is inapplicable to warrantless searches and, thus, defense counsel performed deficiently by not citing *Eisfeldt*. Although Mr. Leonard is correct that the private search doctrine is contrary to the Washington Constitution, that doctrine has no bearing here. Here, the arresting officer properly searched Mr. Leonard

11

and his personal effects incident to arrest for an outstanding warrant.[4] For this reason,

*Eisfeldt* also would not have helped Mr. Leonard's CrR 3.6 motion. We conclude defense

counsel did not perform deficiently by not citing it.

B.    INEFFECTIVE ASSISTANCE BECAUSE OF STATE'S PLEA BARGAIN PRACTICE

Mr. Leonard appeals the trial court's denial of his CrR 8.3(b) motion. In that

motion, Mr. Leonard argued the State "[c]ondition[ed] ECR status and plea offers on an

abbreviated, if not completely absent, investigation process." CP at 29.

CrR 8.3(b) provides, in relevant part, that

[t]he court, in the furtherance of justice, after notice and hearing, may
dismiss any criminal prosecution due to arbitrary action or governmental
misconduct when there has been prejudice to the rights of the accused
which materially affect the accused's right to a fair trial.

A trial court's power to dismiss a prosecution under CrR 8.3(b) is discretionary and is

generally reviewed for a manifest abuse of discretion. *State v. Moen*, 150 Wn.2d 221,

226, 76 P.3d 721 (2003). In the absence of some detrimental reliance by the defendant,

---

[4] Similarly, the private search doctrine would not have applied had Mr. Hastings given Mr. Leonard's heroin to the arresting officer—an alternate factual scenario supported by the record. The private search doctrine would not have applied under that scenario because the doctrine does not apply when a private person delivers contraband to the police. *See Eisfeldt*, 163 Wn.2d at 638 n.9 (noting that citizens do not retain a privacy interest in evidence of a crime obtained by a private actor and delivered to the police).

the State may withdraw any plea agreement prior to the actual entry of a guilty plea. *State v. Wheeler*, 95 Wn.2d 799, 803, 631 P.2d 376 (1981).

Mr. Leonard's central argument is that he had only a limited time frame to accept the State's ECR plea offer and, as a result, defense counsel did not have an adequate opportunity to investigate and help him make an informed decision about whether to plead guilty. To the extent Mr. Leonard rests his challenge on an ineffective assistance claim, this court reviews the claim de novo. *See State v. A.N.J.*, 168 Wn.2d 91, 109, 225 P.3d 956 (2010) (reviewing trial judge's decision not to allow A.N.J. to withdraw his guilty plea de novo when A.N.J. based his claim on ineffective assistance).

Effective assistance of counsel includes helping the defendant make an informed decision about whether to plead guilty or proceed to trial. *Id.* at 111. Defense counsel cannot properly evaluate the merits of a plea offer without evaluating the State's evidence. *Id.* at 109. To allow a defendant to make a meaningful decision about a plea, defense counsel must, at a minimum, reasonably evaluate the State's evidence and the likelihood of the defendant's conviction at a trial. *Id.* at 111-12. There is not a bright line rule for when counsel has insufficient information to provide competent advice in the plea bargaining process, and the issues and facts of each case dictate the degree and extent of

investigation required by counsel under the Sixth Amendment. *Id.* at 111; *State v. Shelmidine*, 166 Wn. App. 107, 114 n.4, 269 P.3d 362 (2012).

Defense counsel's duty to investigate does not necessarily require defense counsel to interview every conceivable witness. *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 739, 101 P.3d 1 (2004) (quoting *Bragg v. Galaza*, 242 F.3d 1082, 1088 (9th Cir.), *amended by* 253 F.3d 1150 (9th Cir. 2001)). To establish deficient performance, a defendant seeking relief under a "failure to investigate" theory must show a reasonable likelihood that the investigation would have produced useful information not already known to defense counsel. *Id.*

Division Two's decision in *Shelmidine* addressed a highly analogous situation to the present case. There, the State charged Ms. Shelmidine with delivery of a controlled substance and then extended a favorable plea offer, but conditioned the offer on Ms. Shelmidine not seeking the confidential informant's identity. *Shelmidine*, 166 Wn. App. at 109. If Ms. Shelmidine sought the informant's identity, the State said it would withdraw the offer and proceed to trial. *Id.* at 109-10. Apart from the informant's identity, the State otherwise provided full discovery, including: the informant's drug, alcohol use, and criminal histories, the terms of the contract between the State and the informant, several police reports, a transcribed telephone conversation between Ms.

14

Shelmidine and the informant, and laboratory reports analyzing the substances Ms. Shelmidine sold the informant. *Id.* at 110. Ms. Shelmidine argued that the conditional terms of the State's plea offer prevented defense counsel from providing effective assistance of counsel because defense counsel could not reasonably evaluate the evidence against her. *Id.* at 111.

The *Shelmidine* court held that there was sufficient evidence for defense counsel to reasonably evaluate the evidence against Ms. Shelmidine and effectively assist her in making an informed decision about whether to plead guilty or go to trial. *Id.* at 114. The court reasoned that defense counsel received everything significant about the State's case, except for the informant's identity. *Id.* However, the court noted that even if defense counsel had received *no* information about the informant, the result would be the same because the missing information was simply part of what defense counsel may discuss with the client as they consider the State's offer. *Id.* at 114 n.3. The court further reasoned that defense counsel could have interviewed the police officers and the known eyewitness, and could have informed Ms. Shelmidine of the specific terms of the State's plea offer. *Id.* at 114.

Here, as in *Shelmidine*, there was sufficient evidence available so defense counsel could reasonably evaluate the benefits and risks of going to trial and advise his client.

15

Defense counsel received discovery and the State's ECR plea offer on September 5, 2014—over seven weeks before the plea offer's October 28 expiration date. Defense counsel had the arresting officer's affidavit of facts, which contained a narrative of Mr. Hastings's testimony. Defense counsel also had Mr. Hastings's personal report. Before the State withdrew its ECR offer on December 4, defense counsel had also subpoenaed and received records relating to special police commissions and was able to obtain the recording of Mr. Hastings's Crime Check call. Defense counsel could have also interviewed the arresting officer. Therefore, defense counsel had sufficient information to provide Mr. Leonard competent advice in the plea bargaining process.

Moreover, at the bench trial, Mr. Leonard stipulated to all the facts contained in the arresting officer's affidavit of facts, as well as Mr. Hastings's personal report. Because Mr. Leonard eventually stipulated to the reports he had weeks before the State's ECR offer expired, Mr. Leonard has failed to show a reasonable likelihood that an interview with Mr. Hastings would have produced any useful information that he already did not have. Defense counsel's failure to interview Mr. Hastings before the ECR offer expired therefore did not deprive Mr. Leonard of effective representation. *See Davis*, 152 Wn.2d at 739 n.289 (citing *Bragg*, 242 F.3d at 1088).

No. 33698-1-III
*State v. Leonard*

We conclude the State's ECR plea bargaining practices did not violate Mr. Leonard's right to effective assistance.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, A.C.J.

WE CONCUR:

Siddoway, J.

Pennell, J.

17